DITTMAN and wife, Respondents, v. NAGEL and wife, Appellants.

*No. 258. Argued May 7, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 190.)

156

158

For the appellants there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Scott V. Lowry.*

For the respondents there was a brief by *Johnson & Johnson* of Waukesha, and oral argument by *Kenneth L. Johnson.*

HANLEY, J. Two issues are raised on appeal:

(1) Did the warranty in the offer to purchase extend beyond the date of the acceptance of the offer; and

(2) What is the proper measure of damages for breach of warranty in the sale of realty?

There is a third problem involved in this case which has not been raised by the parties. The record does not contain any findings of fact or conclusions of law. How-

ever, the memorandum decision of the trial court is in the record:

". . . In *Kamuchey v. Trzesniewski* (1959), 8 Wis. (2d) 94, 98 N. W. (2d) 403, we stated the requirement of sec. 270.33 to make findings of fact and conclusions of law was directive but strongly recommended strict compliance with the section as a great help to the litigants and to this court.

"When there is a failure to make findings of fact and conclusions of law, this court on appeal may adopt one of three courses: (1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions. *Wallis v. First Nat. Bank* (1914), 155 Wis. 533, 145 N. W. 195. As recent as *Grimh v. Western Fire Ins. Co.* (1958), 5 Wis. (2d) 84, 92 N. W. (2d) 259, we stated the lack of findings was not necessarily reversible error and this court could affirm if the examination of the evidence shows the trial court reached a result which the evidence would sustain if a specific finding supporting that result had been found." *State ex rel. Skibinski v. Tadych* (1966), 31 Wis. 2d 189, 198, 199, 142 N. W. 2d 838.

### 1. Warranty.

The defendants argue that the warranty in the offer to purchase speaks only as of the time of the sale. Defendants further argue that the sale took place on March 23, 1965, when the sellers signed the offer to purchase.

The plaintiffs contend that a seller's warranty runs until the purchaser has a reasonable chance to inspect the premises.

The trial court's opinion clearly shows that he was more impressed by the plaintiffs' argument.

"The warranty is clear and unambiguous. An adequate supply of water for human consumption means exactly what it says. The court finds that on May 31st, 1965, the well did not produce an adequate supply of water for human consumption.

". . . The evidence is clear that the water was of a deep gray color on May 31st, and that it was inspected and tested at the earliest opportunity. . . . the water did not meet the standards of the warranty . . ."

By an obvious inference from the quotation above, the trial court was of the opinion that the warranty bound the sellers until the purchasers had a reasonable chance to inspect the well and test the water.

There is very little case law which discusses express warranties of quality as they apply to realty.[1] However, the legal principles which have developed regarding express warranties as they apply to the sale of goods certainly appear to be equally applicable to an express warranty of quality involved in a sale of realty. Other states have so held without commenting on the distinction. *Jones v. National Bank of Commerce of Seattle* (1965), 66 Wash. 2d 341, 402 Pac. 2d 673 (action by purchasers against vendors for breach of express warranty that ranch had good sprinkler system); *Winslett v. Rice* (1960), 272 Ala. 25, 128 So. 2d 94 (action by purchaser against vendor for, among other items, breach of express warranty that well produced clear water); and *Meyers v. Antone* (D. C. App. 1967), 227 Atl. 2d 56 (contract for sale of real estate contained express warranty that heating plant was functioning properly).

"A 'warranty' is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself, and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue. . . ." 17A C. J. S., *Contracts*, p. 325, sec. 342.

An express warranty included in a contract to purchase real estate is just as effective and binding as an express

---

[1] It is generally the law that there are no implied warranties of quality in the sale of real estate. *See* 7 Williston, *Contracts* (3d ed.), p. 804, sec. 926A, and cases cited therein.

warranty included in a contract to purchase goods.[2] It should be stated, however, that only the common law principles of warranty apply when realty is involved. Special warranty provisions included in the Uniform Sales Act and the Uniform Commercial Code specifically apply only to the sale of "goods" and realty is not included in the definition of "goods."

Prior to discussing the effective date of the warranty in this case, one other preliminary item should be noted. The defendants contend that the warranty of "an adequate supply of water for human consumption" relates only to the "quantity" and not to the "quality" of the water. The cases which are cited to support this proposition are clearly distinguishable.[3]

The trial court specifically stated in his decision that the warranty involved here was clear and unambiguous, and that the warranty applied to the quality as well as the quantity of the water. There is no ambiguity in the words (fit) "for human consumption." Giving the words their ordinary and expected meaning, the defendants must be held to have warranted the quality of the well water.

The defendants' primary argument, however, concerns the time the warranty is effective. The defendants particularly point out that the warranty is expressed in words of the present tense:

[2] *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 141 N. W. 2d 909, also involved a contract to purchase real estate with an express warranty. Unfortunately, that case does not provide any guidelines for this one because it was mostly concerned with summary judgment.

[3] The defendants cite cases which involve contracts to drill wells. The rule of those cases was that a contractor who promised to hit water did not impliedly warrant the quality of the water. None of the cited cases involved an express warranty to provide water "fit for human consumption." Nor did any of the cases involve an express warranty which could reasonably have been interpreted as relating to the "quality" of the water.

"The seller *warrants* the well . . . *produces* an adequate . . ." (Emphasis supplied.)

There is merit to this argument:

"Unless otherwise expressed, a warranty relates only to the time of sale and does not cover future defects not then in existence or inherent in the article, and this is true although the contract is for future delivery. That is to say, a breach of warranty can be predicated only on a loss caused by a defect which existed at the time of the sale, although, if then existent, it need not be fully developed. . . ." 77 C. J. S., *Sales,* p. 1172, sec. 321.

". . . Although a warranty need not necessarily relate to the quality, condition, or properties of the thing sold at the time of the sale, but may be prospective in its operation, the ordinary warranty as to condition or quality relates to the time of sale, and if broken at all is broken when the sale is made. . . ." 46 Am. Jur., *Sales,* p. 555, sec. 375.

Wisconsin follows the general rule that the warranty must be broken as of the time of sale. In *Tegen v. Chapin* (1922), 176 Wis. 410, 187 N. W. 185, a cow had been warranted to be a breeder, but the first calf was born dead. The court stated, at page 413, that the burden was on the buyer

". . . to establish by a fair preponderance of the evidence that the cow was at the date of the sale, on March 16, 1920, incapable of producing a mature calf. . . ." *See also: White v. Stelloh* (1889), 74 Wis. 435, 43 N. W. 99.

The plaintiffs contend that the warranty runs until they had a chance to inspect the well. To a certain extent the plaintiffs' contention is correct. As buyers relying on a warranty, they had a reasonable time to discover the defect and to notify the sellers of the breach. However, the fact that the buyers have a reasonable time to discover the defect does not relieve them of the burden of showing that the warranty was breached as of the time of the sale.

Although the defendants correctly stated that the warranty must be breached at the time of the sale, they erroneously refer to the acceptance of the offer to purchase (March 23, 1965) as the date of the sale. The sale of realty for the purpose of a breach of warranty does not occur until the passing of legal title.[4] The acceptance of the offer to purchase simply creates a contract to sell.

"A contract for the sale of land, or of an interest therein, is one in which one party agrees to buy and the other agrees to sell, and each would be held responsible for a breach of the contract; ordinarily, a contract for the sale of real property is binding on both parties. It is an executory contract, to be performed in the future, and, if fulfilled, results in a sale.

". . .

"*The distinction between a sale* and an agreement to sell and buy is said to be recognized by all of the authorities. The agreement to sell and buy is preliminary to a sale and is not the sale itself; and it is said in this connection that anything short of passing title is not a sale, but an agreement of sale." 91 C. J. S., *Vendor & Purchaser,* pp. 829, 830, sec. 1 (d), and cases cited therein.

The warranty, even though stated in the offer to purchase, relates to the time of the conveyance.

". . . It is not necessary to its efficacy that a warranty should be simultaneous with the conclusion of the bargain, but it is sufficient if it is made pending the sale in the course of dealing and then enters into the bargain as part of it. . . ." 77 C. J. S., *Sales,* p. 1135, sec. 309.

"It is not necessary that the giving of a warranty be simultaneous with the sale. It is enough if it is made under such circumstances as to warrant the inference that it enters into the contract. . . ." *Vitro Corp. of America v. Texas Vitrified Supply Co.* (1962), 71 N. M. 95, 104, 376 Pac. 2d 41.

---

[4] The offer to purchase calls for a closing date of "April 30, 1965, or at such other time and place as may be designated . . ." The statement of facts in the defendants' brief sets the closing on April 30, 1965. The only testimony in the record is from Mrs.

"In an executory contract of sale, a seller may agree or warrant that the article shall have certain qualities. This agreement, warranty, or agreement to warrant in an executory contract of sale is just as obligatory as a warranty on a present sale and delivery of goods. It has been said that in an executory contract the warranty is part of the contract to sell and at delivery a part of the sale. The view has, however, been taken that until the executory contract has been performed to the extent of vesting the title in the buyer, a warranty is ineffectual to constitute a technical warranty on which the buyer can maintain a claim for damages as for a breach." 46 Am. Jur., *Sales*, p. 485, sec. 302.

By their warranty, the defendants guaranteed that the well was producing water fit for human consumption as of the closing date.

It is quite obvious from the trial court's decision that he was not concerned with the closing date. Nonetheless, when findings of fact are not entered, this court may affirm the decision of the trial court

". . . if the examination of the evidence shows the trial court reached a result which the evidence would sustain if a specific finding supporting that result had been found." *State ex rel. Skibinski v. Tadych, supra,* at page 199.

Assuming, then, that the court specifically found that the date of closing was May 7, 1965 (the most favorable date for the plaintiffs which is in the record) and that the warranty was breached as of that day, would the evidence sustain such a finding?

Neither of the plaintiffs could personally testify as to the quality of the water before May 30, 1965. Both the defendants testified that the water was clear and safe up to and including May 28, 1965. Mr. Dittman (plaintiff) testified that when he received the keys to the house, Mr. Nagel (defendant) warned him that the water

Dittman (one of the plaintiffs). She stated that the closing occurred on May 7, 1965.

was dirty. The record indicates that the keys were delivered on May 28, 1965. The sanitation expert who took a well sample on June 14, 1965, testified that he could not state with any degree of certainty whether the well was producing unsafe water prior to June 14, 1965. The well-digger who put in the new well for the plaintiffs testified that he could not tell when the water in the old well went bad.

The only evidence which would indicate that the well was bad on May 7, 1965, was indirect. Mr. Nagel testified that a neighbor drilled a well during April, 1965. An expert who testified for the defendants stated that it was undoubtedly the drilling of the new well in the neighborhood which caused the well water in question to become dirty. The expert testified further, however, that he could not say how long it would take the drilling of the new well to affect the old one.

"The burden of proof is on the party relying upon a breach of warranty to show the breach thereof, and that his loss resulted from the breach of such warranty." *Anderson v. Thomas* (1959), 184 Kan. 240, 250, 336 Pac. 2d 821, 831. *See also:* 77 C. J. S., *Sales,* pp. 1283, 1284, sec. 365, and 46 Am. Jur., *Sales,* pp. 490, 491, sec. 309.

We conclude there is no evidence that the well was producing bad water on May 7, 1965, the day of the sale of the property. The plaintiffs have failed to meet their burden of proof, and the judgment in their favor must be reversed.

Since the judgment must be reversed, we do not reach the issue as to whether the proper measure of damages was applied by the trial court.

*By the Court.*—Judgment reversed.