510 P.2d 760

**H. T. HOOVER and Mary B. Hoover, husband and wife, Appellants,**

**v.**

**Karl J. NIELSON and Georgia B. Nielson, husband and wife, Appellees.**

**No. 1 CA–CIV 1910.**

Court of Appeals of Arizona, Division 1.

May 29, 1973.

Rehearing Denied July 5, 1973.
Review Granted Sept. 18, 1973.

Frank E. Dickey, Jr. and Otto H. Linsenmeyer, Phoenix, for appellants.

Leven B. Ferrin, Phoenix, for appellees.

HOWARD, Judge.

On April 3, 1973, we filed our original opinion in this case issued without oral argument. We subsequently vacated our opinion on April 19, 1973, when it was disclosed that the appellees had served their answering brief on the lawyers representing Arizona Title & Trust Company instead of the attorneys for appellants. We then permitted the appellants to file their reply brief and granted oral argument to the parties. Our opinion follows.

Capitol Investment Corporation (hereinafter referred to as Capitol) entered into an agreement with Arizona Title Insurance & Trust Company (hereinafter referred to as Arizona Title) to purchase 160 acres of land in Yavapai County near Lake Pleasant for the sum of $8,000 payable in installments. An escrow was set up between Capitol and Arizona Title, under the terms of which Arizona Title was to act as collection agent.

The contract of sale between Capitol and Arizona Title provided that as long as Capitol was not in default it would be entitled to partial release of the property in minimum parcels of 30 acres upon the basis of $55 per acre paid against the unpaid principal balance due.

Appellants-defendants H. T. Hoover and Mary B. Hoover (hereinafter referred to as the Hoovers) entered into an agreement with Capitol to purchase 80 of the 160 acres for the sum of $5,000 payable in installments. The sales agreement between

Capitol and the Hoovers stated that the ". . . existing Agreement shall remain the obligation of the Seller and the Seller agrees to discharge said Agreement before the buyer shall have caused the balance due herein to be paid in full." An escrow was set up between Capitol and the Hoovers with Arizona Title as the collection agent. Arizona Title was instructed in writing that any money collected on the Hoover-Capitol transaction was to be applied on the Capitol-Arizona Title indebtedness.

Sometime after their purchase from Capitol, the Hoovers contacted the appellees-plaintiffs Nielsons concerning a possible purchase or trade of some apartments owned by the Nielsons in Maricopa County. An exchange was agreed upon whereby the Hoovers would transfer their interest in the Yavapai County property plus some lots in Utah in exchange for the Nielsons' interest in the apartments. Prior to effecting the exchange, the Nielsons wanted to make sure that the Yavapai property was not subject to any other encumbrances and that none but the Hoovers had any interest in the property. At the Hoovers' suggestion the Nielsons talked to one Douglas O. Fox, who together with his wife Dorothy I. Fox, were the sole owners of Capitol. After Mr. Fox assured the Nielsons of the amount due and owing on the property and that no other person had any interest in the property, the exchange took place. The Hoovers gave Nielsons a quitclaim deed on the Capitol property together with a document hereinafter referred to as "Exhibit 2" which stated as follows:

"TO WHOM IT MAY CONCERN:

I swear that the following statements are true and that if found to be untrue nullifys [sic] and voids a quit claim deed on the following property . . . .

I swear that at the signing of the quit claim deed on the above described property there is no other indebtedness to the property save that which is owed to the Arizona Title Co. That I have not sold, or conveyed in any way my interest in this property to anyone and that all assesments [sic], taxes, payments are paid only to the Arizona Title Co. The approximate balance to the Arizona Title Co. is in the amount of $4300.00.

signed this 2 day of April, 1966 at Phoenix, Arizona

/s/   H. T. Hoover"

After the exchange of properties had taken place the Nielsons contacted Mr. Fox again to find out the amount of cash necessary to pay off the property in full. The Nielsons met Mr. Fox at the Arizona Title office at which time a check in the amount of $4,444.57 was given to Arizona Title by Nielsons. For some unknown reason the escrow agent, instead of applying the payment on the Capitol-Arizona Title account, paid the sums directly to Capitol.

The first indication the Nielsons had that something had gone awry was when they received from Arizona Title a declaration of forfeiture addressed to themselves, Capitol, H. T. Hoover et ux., Charles W. Hardy et ux., and Harry Behm et ux., notifying them that the agreement between Capitol and Arizona Title had not been complied with and that default had been declared for failure to make contract payments pursuant to the agreement. The Nielsons then contacted Arizona Title and found out that in order to save their property they would have to pay an additional $8,800, the amount due and owing under the Arizona Title-Capitol agreement. The Nielsons then contacted the Hoovers who, although sympathetic, did nothing about the delinquent payments. Apparently no one had informed the Nielsons of the escrow instructions in the Capitol-Hoover file.

After the forfeiture was completed, the Nielsons instituted the present lawsuit against the Hoovers, Capitol and the Foxes alleging breach of warranty and asking for rescission of their contract with the Hoovers. The Hoovers filed their answer and cross-claimed against Capitol and the Foxes. The Nielsons' complaint was later

amended to add Arizona Title as a defendant. A motion for summary judgment in favor of Arizona Title and against Nielsons was reversed by this court in Nielson v. Arizona Title Insurance and Trust Company, 15 Ariz.App. 29, 485 P.2d 853 (1971).

The case was tried to the court which made extensive findings of fact and conclusions of law. It found in favor of the Nielsons and against defendants Capitol, Hoover, and Fox. The court decreed rescission requiring the Hoovers to return the apartments to the Nielsons and the Nielsons to return the Utah property to the Hoovers. It awarded the Nielsons judgment against Capitol, the Hoovers and the Foxes in the sum of $4,244.16, and directed the Hoovers to prepare an accounting of all monies received and expended in connection with the apartments, which would be taken into consideration to allow either an offset against the award to the Nielsons or as an additional award to them.

Appellants present the following questions for review:

### "Question One

Was Exhibit 2 an ambiguous representation rather than a 'warranty' which was not breached by defendants HOOVER, and as a result of which plaintiffs failed to show damage, and which had to be construed against the plaintiffs?

### Question Two

Where an exchange of property was made and the receiving party was to assume and pay the indebtedness on the property received, and payment was made, but misapplied by the third party principal escrow agent, is the paying party entitled to recover the property he conveyed, and the money paid, from the person who conveyed the property to him on the ground of failure of consideration and false representations (breach of warranty), or is the loss chargeable only against the principal escrow agent misapplying the funds?

### Question Three

Were the facts found and the conclusions reached by the trial court clearly erroneous where the documentary evidence establishes that there was no breach of warranty, nor false representations, nor damage caused by the defendants HOOVER?

### Question Four

. Were defendants HOOVER entitled to a new trial where the principal escrow agent which was not a party at trial, then was shown by the evidence and by the testimony to be at fault as the result of the misapplication of funds and the failure to comply with the terms of its agreement?"

The Hoovers argue that "Exhibit 2" is ambiguous and that it should therefore be resolved against the Nielsons. We find that any ambiguity was explained by Karl Nielson from the witness stand. He testified that Mr. Hoover told him that the Yavapai property "was not entangled with any other property whatsoever"; that the property was clear; that there were no other encumbrances against it; that there was only one contract on the property in the sum of $4,300 and that the document was then drafted and executed in order to agree with these assurances.

Appellants next contend that "Exhibit 2" was not a warranty, as the trial court found it to be, but only a representation. We do not agree. A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue. Dittman v. Nagel, 43 Wis.2d 155, 168 N.W.2d 190 (1969); 17A C.J.S. Contracts § 342 (1963). A warranty is an undertaking that a certain fact regarding the subject of the contract is what it has been represented to be. Vilord v. Jenkins, 226 So.2d 245

**134**

(Fla.App.1969). Hoovers' agreement that their quitclaim deed to Nielsons was to be void and of no effect if their statements in "Exhibit 2" were not true supports the finding of the trial court that the document constituted a warranty.

■ The Hoovers contend, however, that any loss sustained by the Nielsons was not occasioned by any of their misrepresentations but rather because of Arizona Title's failure to follow the escrow instructions in the Capitol-Hoover transaction. Indeed, one of the trial court's conclusions of law was that the Nielsons had a right to demand that Arizona Title release the eighty acres upon the payment of the sum of $4,444.57 and that Arizona Title was at fault because it failed to do so. But Arizona Title's wrongful acts are not material in this case in view of Hoovers' express agreement that if their statements were untrue the quitclaim deed was to be void and a nullity.

■ The Hoovers next object to ten findings of fact and eleven conclusions of law made by the trial court. Findings of fact will not be set aside by this court unless they are clearly erroneous. An appellate court is not, however, bound by the trial court's conclusions of law. Park Central Development Co. v. Roberts Dry Goods, Inc., 11 Ariz.App. 58, 461 P.2d 702 (1969).

■ As to some of the Hoovers' objections, we find that they were not presented to the trial court and therefore cannot be raised for the first time on appeal. Sato v. First National Bank of Arizona, 12 Ariz.App. 263, 469 P.2d 829 (1970). As to their others, we find they are without merit.

■ The Hoovers' final contention is that the trial court erred in not granting their motion for a new trial when the summary judgment in favor of Arizona Title against Nielsons was reversed by this court and the Hoovers appeared to have a cross-claim against Arizona Title. We find no abuse of the trial court's discretion in denying the Hoovers' motion. When the Nielsons' complaint was amended below, the Hoovers made no effort whatsoever to assert a cross-claim against Arizona Title.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.