518 P.2d 990

**H. T. HOOVER and Mary B. Hoover,**
**husband and wife, Appellants,**

v.

**Karl J. NIELSON and Georgia B. Nielson,**
**husband and wife, Appellees.**

**No. 11281–PR.**

Supreme Court of Arizona,
In Banc.

Feb. 11, 1974.

Rehearing Denied March 12, 1974.

Otto H. Linsenmeyer and Frank E. Dickey, Jr., Phoenix, for appellants.

Leven B. Ferrin, Phoenix, for appellees.

HOLOHAN, Justice.

This matter comes before us on petition for review of a decision of the Court of Appeals, 20 Ariz.App. 130, 510 P.2d 760 (filed April 3, 1973), affirming the judgment of the Superior Court which ordered rescission of a land exchange agreement between appellant and appellee.

We are asked to consider four questions: 1) Was there a breach of warranty by the appellants Hoover? 2) Was the remedy of rescission available to appellees Nielson? 3) Were the findings of fact and conclusions of law made by the trial court supported by the evidence? 4) Did the trial court err in denying appellants' motion for new trial?

The facts necessary for a determination of this matter are as follows. In August 1965 Arizona Title Insurance and Trust Company, acting as trustee for 160 acres of land in Yavapai County, sold the property to Capitol Investment Corporation for $8,000. Arizona Title acted as escrow agent and as soon as the escrow closed they became what is termed "collection escrow agent." The sales agreement contained a release provision whereby a minimum of 30 acres could be released when a $55-per-acre price had been paid against the unpaid balance due.

Subsequently, appellants H. T. Hoover and Mary B. Hoover purchased 80 acres of the property from Capitol for $5,000 payable in yearly installments. Again Arizona Title acted as escrow agent and "collection escrow agent." The written escrow instructions to Arizona Title stated that any money paid in to the Hoover-Capitol transaction was to be applied to the Capitol-Arizona Title transaction.

In April of 1966 the appellees, Nielsons, exchanged their interest in apartments in the City of Phoenix with the Hoovers for the 80 acres plus some Utah land. According to the testimony at trial, at Mr. Hoover's request the transaction was not to be put through a title company and the transfer would take place by an exchange of quitclaim deeds. To reassure himself, Mr. Nielson contacted Douglas O. Fox, who along with his wife owned Capitol Investment, to obtain information about the legal status of the 80 acres. He was told that everything was in order. The exchange of the quitclaim deeds took place

and at the same time a statement was prepared by Mr. Nielson and signed by Mr. Hoover. It stated:

> "I swear that at the signing of the quit claim deed on the above described property there is no other indebtedness to the property save that which is owed to the Arizona Title Co. That I have not sold, or conveyed in any way my interest in this property to anyone and that all assesments [sic], taxes, payments are paid only to the Arizona Title Co. The approximate balance to the Arizona Title Co. is in the amount of $4300.00.

> "signed this 2 day of April, 1966 at Phoenix, Arizona

> /s/ H. T. Hoover"

(Exhibit No. 2)

Mr. Nielson again contacted Mr. Fox and found out the amount necessary to pay off the obligation on the land. Mr. Fox accompanied him to Arizona Title where he handed over a check in the full amount ($4,444.57) to the company. The check was made payable to Arizona Title. At that point the lots should have been released from the original 160 acres and the Nielson-Hoover transaction fully completed. Instead Arizona Title failed to follow the escrow instructions and turned the money over to Capitol. Capitol did not discharge the underlying obligation on the 160 acres, and Arizona Title noticed all the parties of forfeiture proceedings.

When the Nielsons inquired of Arizona Title as to the circumstances of the forfeiture, they were told that in order to save their property they would have to pay $8,800—the full amount due from Capitol. The Nielsons contacted both the Foxes and the Hoovers and both refused to take any action.

The Nielsons chose to allow the forfeiture proceedings to go uncontested by them and then filed the present lawsuit. Their complaint named the Hoovers, the Foxes, Capitol and Arizona Title as defendants.

They sought rescission of the contract with the Hoovers, the return of their $4,444.57 payment and damages. The Hoovers crossclaimed against Capitol and the Foxes. A summary judgment in favor of Arizona Title against the Nielsons was reversed in Nielson v. Arizona Title Insurance and Trust Company, 15 Ariz.App. 29, 485 P.2d 853 (1971).

While the Arizona Title portion of the case was in the appeal process, the other parties proceeded to trial. A decision in favor of the Nielsons and against the Hoovers, the Foxes and Capitol was rendered. The trial court, sitting without a jury, gave judgment in the amount of $4,244.16 and directed rescission of the agreement putting the parties back to their original positions. The Hoovers were to prepare an accounting of the expenditures and income concerning the apartments which would be considered in allowing an offset to the award of the Nielsons or as an additional award to them. The Hoovers, alone, appealed the judgment.

On appeal, the Court of Appeals affirmed the trial court's decision. Hoover v. Nielson, *supra.* We granted the petition for review.

For the reasons stated below the opinion of the Court of Appeals is vacated and the judgment of the trial court affirmed.

The Court of Appeals defined warranty as:

> ". . . an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue. Dittman v. Nagel, 43 Wis.2d 155, 168 N.W.2d 190 (1969); 17A C.J.S. Contracts § 342 (1963). A warranty is an undertaking that a certain fact regarding the subject of the contract is what it has been repre-

sented to be. Vilord v. Jenkins, 226 So. 2d 245 (Fla.App.1969)." Hoover, *supra*.

We agree with the definition of warranty given by the Court of Appeals, but we disagree with that court's application of those principles to the warranty by the Hoovers.

■ The Hoovers by their contract did not agree to warrant the title to the property against all claims. They only warranted that they had not sold or conveyed in any way their interest in the property to anyone, that all assessments, taxes and payments were to be paid only to Arizona Title Company, that the approximate balance owing as to Arizona Title was in the amount of approximately $4,300 and that there was no other indebtedness on the property except that which was owed to Arizona Title. The statement is in the nature of an express contract warranty and therefore the words must be "construed according to the clear and natural import of the language used." 17A C. J.S. Contracts § 342, at p. 327. Although this type of warranty is usually found in contracts for the sale of goods, its principles are equally applicable in contracts for the sale of real property. Dittman v. Nagel, 43 Wis.2d 155, 168 N.W.2d 190 (1969). The only portion of the warranty we find ambiguous is that which stated there was no other indebtedness on the property except that owed to Arizona Title. It is true that the parcel in question was a part of a larger tract of land subject to an indebtedness, but in light of the fact that payment of the $4,400 would have released the acreage to the Nielsons and would have given them clear title, the representations were true, and we therefore conclude that there was no breach of warranty.

When the Nielsons paid Arizona Title the amount of $4,444.57 the encumbrance against the property was paid in full, and Arizona Title should have released the land from the trust and conveyed it to the Nielsons.

■ The forfeiture by Arizona Title of the Nielsons' interest in the property was the result of the Title Company's carelessness which either the Nielsons or the Hoovers could have defeated by legal action. There was no obligation on the part of the Nielsons to stop the forfeiture proceeding, for they had done what was required of them by the contract, and the Hoovers had the burden to perform their part of the agreement which was to convey the land.

■ Even though there was no breach of warranty, was the remedy of rescission available to the Nielsons? In this case a material part of the consideration was to be the 80 acres. All the Nielsons received was a notice of forfeiture and a lawsuit. They failed to receive the benefit of their bargain. The trial court's finding of fact and conclusion of law as to the warranty was in error, yet it still based its order for rescission on a finding of the lack of consideration. We agree with that finding and the conclusion that the contract should be rescinded, and except for the finding of a breach of warranty, the findings of fact and conclusions of law are supported by the evidence.

■ Having decided that there was no breach of warranty but that the remedy of rescission was available, the next question presented by appellants is whether a new trial should have been ordered in light of the fact that it was the fault of Arizona Title that caused the injury, and Arizona Title was improperly dismissed from the suit before trial leaving appellants to defend the action. Arizona Title was acting as "collection escrow agent" for the Hoover-Capitol transaction. In that capacity it held documents for both parties and was required to perform duties upon written instruction. Although the escrow closed, the title company was acting in a capacity analogous to that of an escrow agent and, in such capacity, is the agent for both the Hoovers and Capitol. See Kresse v. Ryerson, 64 Ariz. 291, 169 P.2d 850 (1946). The Hoovers, under the circumstances of this case, cannot deny responsibility for the

acts of their agent. They had ample opportunity to compel their agent to release the 80 acres, but instead they chose to ignore the forfeiture proceedings. It was within their power to fight the forfeiture but they refused. After the Nielson action was filed any claim the Hoovers had against Arizona Title could have been raised in their pleading by a crossclaim, but they did not pursue this course of action. Based on these facts we find that the trial court acted within his discretion in the denial of the motion for new trial by the Hoovers.

Judgment of the trial court is affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.