729 P.2d 420

**CLEARWATER MINERALS CORPORA-TION, an Idaho Corporation,
Plaintiff-Appellant,**

v.

**Sam R. PRESNELL, Vicci S. Presnell,
Albert N. Presnell, Willis F. Presnell,
Jeanne C. Presnell, Defendants-Respondents.**

No. 16189.

Court of Appeals of Idaho.

Dec. 1, 1986.

William H. Foster, Grangeville, and Arthur D. Zierold (argued), Boise, for plaintiff-appellant.

Delbert W. Steiner, and E. Scott Lee (argued), Lewiston, for defendants-respondents.

BURNETT, Judge.

This is an action for misrepresentation and breach of warranty in a transaction involving an assignment of mining rights. The district court dismissed the complaint, ruling that no warranty had been made, that the plaintiff had waived any claim against the defendants, and that the plaintiff had failed to prove damages. We vacate the district court's judgment and remand the case.

The mining rights in question were assigned by Sam Presnell and family to Albert and Elvin Nelson. The Nelsons subsequently reassigned those rights to the eventual plaintiff, Clearwater Minerals Corporation, ("Clearwater"), an entity created by the Nelsons. The Presnell-Nelson contract, denominated by the parties as a "Royalty Agreement," recited that the Presnells were lessees under a forty-acre state mineral lease and were the holders of five adjacent twenty-acre lode mining claims. The Presnells transferred all their mining rights in these parcels to the Nelsons. In return, the Nelsons prepaid $25,000 in mining royalties and agreed to make minimum annual royalty payments of $20,000 each until at least $400,000 had been paid.

The Nelsons were attracted to these parcels by a brochure received from the Presnells' real estate broker. The brochure represented that the state mineral lease contained more than sixteen million tons of limestone. The Nelsons sampled the ore deposit and apparently were satisfied with the results of a chemical assay. Some time after the Royalty Agreement was signed, the Nelsons' corporation built an access road and a bridge in preparation for production.

As fate would have it, the Nelsons discovered that the Presnells never possessed any rights to the lode mining claims. The parcels in question, known as the "Lucky II" claims, are depicted below:

Three of these claims—Lucky II Nos. 1, 6 and 7—were situated on land owned by private third parties. The two other claims—Lucky II Nos. 4 and 5—were invalid because they were situated on "non-locatable" federal lands. Such lands are owned by the United States but are not available for mineral location. *See generally Brown v. Gurney*, 201 U.S. 184, 26 S.Ct. 509, 50 L.Ed. 717 (1906); I.C. § 47–601. Although "federal preference leases" are available on non-locatable lands, the Presnells had allowed the time for obtaining such leases to expire. *See* 43 U.S.C. § 1744.

Moreover, though valid mining rights existed under the state lease, doubts arose concerning the actual size of the limestone ore deposit on that parcel. Approximately one year after the Royalty Agreement was signed, a geologist hired by the Nelsons concluded that the deposit was roughly one-seventh the size represented in the sales brochure. The district court did not eventually determine the actual size of the deposit, but the judge noted that the Presnells' figure of sixteen million tons had not been supported by any engineer's survey.

In the wake of these disappointing revelations, the Nelsons' corporation, Clear-water Minerals, made no further royalty payments. It filed suit in January, 1984, roughly fifteen months after signing the Royalty Agreement. Clearwater asked the court to award damages and to reform the agreement. After a bench trial, the Presnells prevailed. Clearwater brought this appeal.

I

Clearwater first contends that the district court erred in failing to determine that the Presnells had breached an express warranty in the agreement. The judge held the agreement to be ambiguous. Upon extrinsic evidence, the judge then found that no warranty had been intended. The pertinent portions of the agreement are contained in two paragraphs. Paragraph V provided as follows:

*Presnells warrant and represent to Nelsons that they are the owners and holders of the leases, claims, rights and permits hereinabove described;* that all of said leases, rights, claims and permits are *in full force and effect;* that they are not delinquent thereunder; *that they have submitted all plans and done all other acts and things necessary under*

*the terms of any lease, claim, right or permit* to enable Nelsons to do the acts and things herein contemplated, except submission of the final reclamation plan and the posting of the reclamation bond with the State of Idaho and that all of said leases, claims, rights and permits are free from all liens and encumbrances of every nature and description. [Emphasis added.]

Paragraph XII stated:

The parties hereto acknowledge that additional costs and/or the payment of royalties or rental may be necessary *to perfect the right* to remove minerals from the lode mining claims Lucky II Nos. 1, 4, 5, 6 and 7 ... [Emphasis added.]

The district judge did not state any reasons for his conclusion that these paragraphs, read together, are ambiguous. The Presnells have argued that the language of paragraph XII undercuts the warranty in paragraph V to such an extent that it renders the agreement ambiguous.

### A

■ Whether a contract is ambiguous is a question of law. *E.g., DeLancey v. DeLancey*, 110 Idaho 63, 714 P.2d 32 (1986). An appellate court exercises free review on such a question. Our analysis revolves around the phrase "to perfect" as it appears in paragraph XII. If that phrase signified a taking of steps essential to create the rights to mine the Lucky II claims, then it would conflict with the warranty provision in paragraph V and it would render the agreement as a whole ambiguous. On the other hand, if perfecting rights referred merely to procedures ancillary or subsequent to the initial creation of the rights, then it would not conflict with paragraph V. The agreement would be unambiguous.

[2] The agreement itself contains no definition of the phrase "to perfect." Neither have the parties or the district court suggested one. In our view, there exist three possible interpretations. The first is that perfection refers to a general concept in real property law. Lode mining claims are considered real property in Idaho. I.C. § 55–101. Thus, paragraph XII might refer to any steps necessary to cure remedial defects in "title" to the claims. The term "to perfect title," when used in contracts for the sale of land, generally indicates removal of blemishes on title such that a buyer of ordinary prudence would be satisfied. *E.g., Smith v. Lander*, 106 S.W. 703 (Tex.1907).

If this were the meaning of paragraph XII, it would not create an ambiguity. Paragraph V indicates that the Presnells have existing rights in the subject parcels and that these "rights ... are in full force and effect." In other words, the Presnells warranted that they possessed an entitlement to mine the Lucky II claims. Paragraph XII merely would qualify this warranty by acknowledging that expenditures may be required to remove blemishes on otherwise good "title." Paragraph XII would give no hint that the lode mining claims were completely nonexistent.

■ A second possibility is that perfection was used as a term of art in mining law. Mining claims may be "perfected." *Wilbur v. United States ex rel Krushnic*, 280 U.S. 306, 316, 50 S.Ct. 103, 104, 74 L.Ed. 445 (1930). A person holds a perfected, unpatented mining claim when he has properly "located" the claim, has filed and posted notices of the claim, has actually discovered a valuable mineral deposit, and has maintained the claim thereafter in accordance with state and federal requirements. 2 ROCKY MOUNTAIN MINERAL LAW FOUNDATION, THE AMERICAN LAW OF MINING § 36.01 (1983). Perfection preserves a right in the claim as against all adverse claimants. *Id.* If this was the intended use of the term "to perfect," there would be no ambiguity in the agreement. The lode mining claims would have been "perfected" when a valid location was coupled with discovery and compliance with other requirements. Perfection in this sense would not impart to paragraph XII any suggestion that the lode mining claims were nonexistent because

they had not been, and could not be, validly "located."

Finally, the phrase "to perfect" might have been given a meaning in lay parlance. As commonly used, the verb "perfect" means to finish, to complete or to put in final form. In the context of the Royalty Agreement, such perfection could include compliance with governmental regulations in order to maintain the valid status of the claims.[1] There are numerous such requirements, including performance of annual labor pursuant to state law, I.C. § 47–606, and federal law 43 U.S.C. § 1744(a). Again, such a meaning would create no ambiguity in the agreement. Paragraph V warrants a right to mine the Lucky II claims. Paragraph XII cautions that certain details may have to be completed in order to preserve or to exercise the warranted right. The existence of the right is not placed in doubt.

■ In short, none of the possible readings of paragraph XII conflicts with the warranty contained in paragraph V. We conclude that the district court erred in holding the Royalty Agreement to be ambiguous as a matter of law. It contained a warranty. The court need not, and should not, have utilized extrinsic evidence to construe the agreement. *Jensen v. Westberg,* 109 Idaho 379, 707 P.2d 490 (Ct.App.1985).

**B**

■ A warranty is intended to elicit reliance by the purchaser. *Hoover v. Nielson,* 20 Ariz.App. 130, 510 P.2d 760 (1973), *aff'd,* 110 Ariz. 329, 518 P.2d 990. A purchaser is entitled to rely upon the seller's representations unless he is apprised of facts that would put a reasonably prudent person on notice. *Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319 (Ct.App.1985). Here, the Presnells warranted that they had a valid right to the lode mining claims though in fact they had absolutely none. Thus, even if the Nelsons had been informed that there were problems with the claims requiring additional expenditures "to perfect" their rights, they could not be charged with knowledge, when signing the agreement, that the lode mining claims were wholly illusory. We hold that the Presnells breached a warranty contained in the Royalty Agreement by failing to deliver any valid rights to the Lucky II claims.

The next question is whether the breach was material, viewed in the context of the entire agreement. The answer to this question is not obvious. The parties testified that the central focus of the agreement was the state mineral lease. The main ore body was thought to be situated within the state lease parcel. As noted earlier, doubts concerning the size of the deposit emerged after the agreement was signed. Clearwater asserted in its complaint that the ore body had been misrepresented.

However, the district judge did not decide whether a misrepresentation had occurred. Rather, he ruled that no damage had been shown and, in any event, that Clearwater had waived any claim against the Presnells by taking possession of the property and by failing to file suit until fifteen months after the agreement was signed. We discuss the damage question in Part III of this opinion. Because the ruling on waiver affects Clearwater's claim either for misrepresentation or for a breach of warranty, we now turn to that issue.

**II**

■ Waiver is a voluntary, intentional relinquishment of a known right or advantage. The party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment. *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981);

---

1. In this connection, if paragraph XII were read to mean that the Nelsons would be required to obtain "federal preference leases," the paragraph would contain a material misrepresentation. Evidence adduced at trial indicates that the Presnells understood the procedures for obtaining such leases. As noted earlier, the time for doing so had expired. Any attempt by the Nelsons to obtain leases by complying with the provisions of 43 U.S.C. § 1744, would have been futile.

*Scott v. Castle,* 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). In the present case, the facts found by the district judge do not support the conclusion that a waiver occurred as a matter of law. Taking possession of the property plainly did not evince a voluntary and intentional relinquishment of rights under the Royalty Agreement.

Neither can we find support for a waiver elsewhere in the evidence. The record discloses that the Nelsons did not know they were legally precluded from mining the Lucky II claims until March 1983—seven months after the agreement had been signed. At that time a mining engineer employed by the Nelsons determined the Lucky II claims to be non-locatable. The parties attempted during March, April and May, 1983, to negotiate an adjustment in the agreement. The Nelsons and their corporation prepared to mine the state lease parcel. As noted, these preparatory steps included building a bridge and creating an access road. In October, 1983, the Nelsons employed a geologist to perform a limestone survey on the state lease. The period that elapsed from delivery of the geologist's discouraging report to the filing of this lawsuit was roughly three months. This course of conduct is insufficient to establish waiver as a matter of law. Furthermore, the Presnells have shown no detrimental reliance upon any purported waiver.[2] We hold that the district judge erred in determining that a waiver occurred.

Because there was no waiver, the materiality of the breach of warranty, and the existence of a misrepresentation concerning the ore body, are viable issues. They will determine whether the Presnells are liable to Clearwater. These issues must be addressed on remand. If liability is found, the appropriate relief must be granted. Although Clearwater's complaint asked both for damages and for reformation of the Royalty Agreement, only damages have been argued on appeal. Accordingly, we next consider the damage question.

## III

The judge found that Clearwater failed to carry its burden of proving damages. In general, damages must fairly compensate an aggrieved party for his loss. *Broersma v. Sinor,* 106 Idaho 155, 676 P.2d 730 (Ct.App.1984). The measure of damages may include lost profits and reasonable expenses incurred in anticipation of performance. *King v. Beatrice Foods Company,* 89 Idaho 52, 402 P.2d 966 (1965); *Galindo v. Hibbard,* 106 Idaho 302, 678 P.2d 94 (Ct.App.1984). It is often said that lost profits must be proven with reasonable certainty. However, this does not mean that mathematical exactitude is required. Rather, it means that damages must be removed from the realm of speculation. *E.g., Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966); *Galindo v. Hibbard, supra.* We need not examine the evidence in detail. It is sufficient to say that Clearwater presented data concerning the extent of the ore body that feasibly could be extracted and marketed. The judge found no specific fault with the evidence. He simply said damages were not proven with "reasonable certainty." On remand, if liability is found, we direct the judge to reevaluate the evidence in light of the meaning we have attributed to the phrase "reasonable certainty."

The expenses incurred in anticipation of performance were established with even greater particularity. The district judge noted that Clearwater had made the royalty prepayment of $25,000. The judge also acknowledged that Clearwater had incurred other expenses but he disallowed them because they arose after the Nelsons learned of legal problems connected with

2. We have considered the possibility that the trial judge actually was thinking of the doctrine of laches when he referred to the passage of time before suit was filed. However, laches is defined as the "neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to [an] adverse party, operates as [a] bar in a court of equity." BLACK'S LAW DICTIONARY 787 (5th ed. 1979). The facts discussed above do not satisfy these definitional requirements.

the Lucky II claims. We have held that Clearwater did not waive any claim by continuing to prepare for mining the state lease parcel after legal difficulties on the Lucky II claims were discovered. We conclude that the $25,000 prepayment and other proven expenses are compensable if liability is found on remand.

In summary, we vacate the district court's judgment and remand the case. The court shall determine whether the breach of warranty was material and whether the ore body was misrepresented. If the court finds liability, it shall reevaluate lost profits and it shall grant recovery of Clearwater's expenses in anticipation of performance, unless doing so would conflict with other kinds of relief such as reforming the Royalty Agreement. The party prevailing on remand shall receive costs and a reasonable attorney fee pursuant to the agreement. Such attorney fee award may take into account the legal services provided in this appeal. Costs on appeal are awarded to the appellant, Clearwater Minerals.

WALTERS, C.J., and SWANSTROM, J., concur.