**BANK OF THE WEST, Plaintiff,**

v.

**ESTATE OF John LEO, Defendant.**

**Estate of John Leo, Third–Party Plaintiff,**

v.

**American Offshore Powerboats, et al., Third–Party Defendants,**

**Bank of the West, Plaintiff/Counter–Defendant,**

v.

**Apponaug Marine Supply, Inc., et al., Defendants/Counter–Claimants.**

Nos. CV–03–0235–PHX–ROS, CV–04–0688–PHX–ROS.

United States District Court, D. Arizona.

Aug. 25, 2005.

387

Daniel William Glasser, Edward Jeffrey Walsh, Greenberg Traurig LLP, Phoenix, AZ, for Plaintiff.

Steven Ray Beeghley, Steven Ray Beeghley, Sacks Tierney PA, Kent Steven Berk, Berk & Moskowitz PC, Scottsdale, AZ, Daniel Torrens, Kent E. Turley, Turley Swan & Childers PC, Phoenix, AZ, for Defendant.

Scott Hutchinson, Glendale, AZ, David J. Noonan, Amherst, MA, for Third–Party Defendants.

Joseph B. Swan, Jr., Turley Swan & Childers PC, Phoenix, AZ, Defendant and Third–Party Defendant.

## ORDER

SILVER, District Judge.

This action stems from an unpaid loan on a missing speedboat. Pending before the Court is Apponaug Marine Supply, Inc.'s Motion for Leave to File Third–Party Complaint. For the reasons stated below, the Motion is granted.

## BACKGROUND

On March 22, 2002, John Leo ("Leo") entered into a Standard Marine Purchase Agreement (the "Purchase Agreement") with Apponaug Marine Supply, Inc. ("Apponaug") pursuant to which Leo agreed to purchase an American Offshore model 3100 boat (the "Bad Kitty") for approximately $120,250.00. (Second Am. Compl. ¶ 7 [Doc. # 51, CV–03–235].) According to the Purchase Agreement, Leo paid $10,000.00 down and agreed to pay an additional $11,000.00 to Apponaug upon delivery of the boat. (*Id.* ¶ 9.) To complete his purchase of the Bad Kitty, Leo needed to finance $99,250.00.

That same day, Leo entered into a Retail Installment Contract and Security Agreement (the "Installment Contract") with Apponaug pursuant to which he agreed to purchase the Bad Kitty on installments and repay to Apponaug the principal amount of $99,250.00 over 180 months, plus finance charges. (*Id.* ¶ 12.)

Bank of the West (the "Bank") had an agreement with Apponaug (the "Dealer Financing Contract") by which it would, from time to time, purchase conditional sales contracts from Apponaug. (Compl. [Doc. # 1, CV–04–688].) Under the Dealer Financing Contract, Apponaug warrants, among other things: that it has taken all steps necessary to cause the Bank to have a sole perfected first lien security interest in the relevant vessel; that the sales contract is valid and binding upon the buyer; that the buyer will have no defense, offset, or counterclaim arising out of its conduct; that the boat has been delivered to the buyer; that it does not know of any fact which indicates or suggests the prospective uncollectability of the contract; and that all statements set forth in the sales contract are correct.

On March 22, 2002, in contemplation of an assignment of the Installment Contract to the Bank, Leo executed a Consumer Credit Application pursuant to which he sought financing from the Bank of the West (the "Bank"). (Second Am. Compl. ¶ 10, *supra.*) He also executed a Guarantee of Lien in which he guaranteed that title to the Bad Kitty would be delivered to the Bank. (*Id.* ¶ 12.)

On March 25, 2002, Leo signed and notarized a Notice of Borrower's Acceptance of Vessel (the "Notice of Acceptance") affirming that the Bad Kitty had been delivered to and accepted by him, that it was in good working condition, and that it was complete and met all of his expectations. (*Id.* ¶ 13.) On April 10, 2002, the Bank wired $102,176.56 to Apponaug in exchange for its assignment of the Installment Contract to the Bank. (*Id.* ¶ 14.)

On November 19, 2002, Leo wrote to inform the Bank that the Bad Kitty had never been delivered. (*Id.*) He requested a full refund of all payments made to the Bank and asked that his account be closed immediately. (*Id.*) The Bank has an outstanding balance of more than $100,000 on its loan and no collateral—it cannot find the boat and believes it was never built.

The Bank sued both Leo and Apponaug in an effort to recoup its losses. It filed claims against Leo for intentional and negligent misrepresentation, based on the affirmation of delivery that Leo made in the Notice of Acceptance. Leo recently settled with the Bank for $60,000.00. (*See* Leo's Resp. to Apponaug's Mot. for Leave to File Third–Party Compl. at 2 [Doc. # 87, CV–03–235].)

The Bank also asserted claims for breach of express warranty, negligent misrepresentation, and unjust enrichment against Apponaug. The Bank's claim for breach of express warranty derives from the warranties contained in the Dealer Financing Contract. Its claim for negligent misrepresentation rests on the allegation that Apponaug instructed or encouraged Leo to sign the Notice of Acceptance despite the fact that it was told that Leo had not received the Bad Kitty. The Bank's claim for unjust enrichment is an alternative quasi-contractual claim.

On May 23, 2005, Apponaug moved for leave to file a third-party complaint against Leo. The proposed Third–Party Complaint asserts claims against Leo for intentional and negligent misrepresentation. Apponaug believes it can establish that Leo accepted delivery of the boat. But should the opposite prove true, it alleges it would not have completed the sales transaction but for Leo's representations. The proposed Third–Party Complaint seeks to hold Leo liable for any and all damages awarded to the Bank against Apponaug.

Leo contends that a non-settling defendant may not bring a third-party claim against a settling defendant; that Apponaug's proposed claims are barred by the applicable statutes of limitations; and that no basis for derivative liability exists under Arizona's system of comparative fault.

## DISCUSSION

### I. Legal Standard

Rule 14(a) of the Federal Rules of Civil Procedure provides that "a defending party, as a third-party plaintiff, may cause summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." The third-party plaintiff must obtain leave to make the service if more than ten days have elapsed since service of the original answer. Fed.R.Civ.P. 14(a).

"A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1446 (1990). Claims that are not secondary or derivative cannot be advanced under Rule 14(a) even though they arise out of the same transaction or occurrence as the main claim. *See id.*

### II. Analysis

■ The Court grants Apponaug leave to file its proposed Third–Party Complaint. A non-settling defendant may bring a third-party complaint against a settling defendant. Further, Apponaug's claims against Leo are not futile.

### A. Third–Party Claims Against Settling Defendants

■ Rule 14(a) does not bar a non-settling defendant from bringing a third-party claim against a settling defendant. "It is possible for a party to become a non-party, and then to be subject to impleader." 3 *Moore's Federal Practice* § 14.09 (Matthew Bender 3d ed.2005). Where, as here, the plaintiff's claim against one defendant is dismissed, "that erstwhile defendant becomes a non-party, and may be impleaded by remaining defendants." *Id.*

Leo's reliance on *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 183 (5th Cir.1984), is misplaced. In *McDonald*, after a significant amount of discovery, the plaintiffs, intervenors, and most of the defendants settled. As part of a judgment entered under Fed.R.Civ.P. 54(b), the court prohibited third-party actions by the non-settling defendants against the settling defendants.

Contrary to Leo's suggestion, the Fifth Circuit did not hold that non-settling defendants cannot file third-party complaints against settling parties. The court merely held that the district court acted properly because Rule 14(a) in any event gives courts discretion to deny a party leave to file a third-party complaint. *Id.*

### B. Statutes of Limitations

■ Leo argues that the proposed Third–Party Complaint is barred by the applicable statutes of limitations. The Court, however, may not look beyond the face of the Complaint. Nothing on the face of the complaint shows that the limitations periods have expired.

■ In determining whether to grant impleader, a court may consider whether the proposed third-party complaint states a claim on which relief may be granted. 3 *Moore's Federal Practice,* § 14.21[3] (Matthew Bender 3d ed.2005). The test is not whether recovery is remote or unlikely, but rather whether it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Cf. Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988) (holding that a proposed amendment under Fed.R.Civ.P. 15 is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense").

■■■ "The statute of limitations for a negligent misrepresentation claim is two years." *Hullett v. Cousin,* 204 Ariz. 292, 297, 63 P.3d 1029 (2003) (citing Ariz.Rev.Stat. § 12–542). A claim for intentional misrepresentation must be brought within three years after the cause of action accrues. Ariz.Rev. Stat. § 12–543. The statutes of limitations for both negligent and intentional misrepresentation begin to run when the plaintiff knew or by reasonable diligence should have known of the misrepresentation. *Coronado Dev. Corp. v.Super. Ct. of Ariz.,* 139 Ariz. 350, 352, 678 P.2d 535, 537 (Ariz.Ct.App.1984) (discussing applicability of discovery rule to claim for intentional misrepresentation); *Anson v. Am. Motors Corp.,* 155 Ariz. 420, 747 P.2d 581 (holding that the discovery rule applies to Ariz.Rev.Stat. § 12–542).

Nothing on the face of Apponaug's proposed Third–Party Complaint indicates when the applicable limitations periods began to run. Leo argues that "Apponaug's damages, if any, were suffered in April 2002," when Leo signed the Notice of Acceptance. (Def. Leo's response at 3). That is not the relevant question. The question is when Apponaug knew or should have known that the statements in the Notice of Acceptance were false. The Complaint does not answer this question, nor does Leo.[1] Apponaug's claims withstand a futility analysis. *Cf. Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) (holding that a motion to dismiss based on a statute of limitations defense may only succeed if the running of the statute is apparent on the face of the Complaint).

## C. Comparative Fault

■■■ Leo further argues that Apponaug's claims are futile because Apponaug has no basis to seek contribution or indemnity from him under Arizona law. The Court rejects this argument—Leo has ignored the Bank's claim against Apponaug for breach of warranty and Leo's potential derivative liability on that claim.

"Impleader is proper only when a right to relief exists under the applicable substantive law." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1446 (1990). "If ... the governing law does not recognize a right to contribution or indemnity, impleader for these purposes cannot be allowed." *Id.*

Arizona abolished joint and several liability in 1987. *Hutcherson v. City of Phoenix,* 192 Ariz. 51, 961 P.2d 449 (Ariz.1998). Under Ariz.Rev.Stat. § 12–2506(A), in an action for personal injury, property damage, or wrongful death, a jury must allocate the responsibility of each actor "in direct proportion to that person's percentage of fault." The trier of fact may consider the conduct of both parties and nonparties, Ariz.Rev.Stat. § 12–2506(B), apportioning relative degrees of fault "as a whole at one time," Ariz.Rev.Stat. § 12–2506(C).

The Bank has sued Apponaug for both breach of warranty and negligent misrepresentation. Leo correctly points out that under Arizona's comparative fault system, Apponaug may be held liable only for its proportionate share of the damages on the Bank's negligence claim against Apponaug. If the Bank had asserted only this claim against Apponaug, there would be no reason to implead Leo.

■■■ But the Bank has also asserted a breach of warranty claim against Apponaug, and derivative liability may exist on that claim. "A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely." *Hoover v. Nielson,* 20 Ariz.App. 130, 510 P.2d 760 (Ariz.Ct.App.1973). It "relieve[s] the promisee of any duty to ascertain the fact for himself and amounts to a promise to indem-

---

1. Nor does the Complaint indicate when the Bank knew or should have known that Leo's statements were false. *See* Fed.R.Civ.P. 14(a)

("The third party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim.")

nify the promisee for any loss if the fact warranted proves untrue." *Id.*

If the Bank prevails on its breach of warranty claim, Apponaug will be liable for the full amount of the Bank's loss. Leo, however, will be derivatively liable to Apponaug to the extent of his comparative fault if Apponaug can show that it made the warranty in reasonable reliance on Leo's intentional or negligent misrepresentation—i.e., in reliance on Leo's statement that he received the boat. "[T]he fact that a third-party complaint may be based on a different legal theory from the underlying case does not bar impleader." *Moore's Federal Practice, supra,* § 14.04[2]. Arizona's comparative fault rules do not render the proposed Third–Party Complaint futile.

Accordingly,

**IT IS ORDERED** that Apponaug Marine Supply, Inc.'s Motion for Leave to File Third–Party Complaint [Doc. # 85] is **GRANTED**.