James A. Holzbauer
and Theresa Holzbauer, Plaintiffs,

Board of School Directors of the Public Schools
of the City of Milwaukee, Plaintiff-Appellant,

v.

Safway Steel Products, Inc. and ABC Insurance
Company, Defendants-Respondents.†

Court of Appeals

*No. 2004AP2058. Submitted on briefs August 30, 2005.
—Decided October 25, 2005.*

2005 WI App 240

(Also reported in 708 N.W.2d 36.)

† Petition to review denied 2-27-06.

251

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Jan A. Smokowicz*, assistant city attorney.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Jay R. Starrett* and *Pamela M. Schmidt* of *Whyte Hirschboeck Dudek, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. The Board of School Directors of the Public Schools of the City of Milwaukee ("MPS") appeals from nonfinal orders of the trial court (1) granting summary judgment to Safway Steel Products, Inc., on its counterclaim against MPS and denying summary judgment to MPS on the same issue; and (2) denying MPS's motion for leave to amend its answer to assert a statute of frauds defense. We conclude that the trial court misapplied the burden of proof in ana-

lyzing Safway's motion for summary judgment, and that MPS is entitled to summary judgment as a matter of law. Therefore we reverse and remand with directions to enter judgment in MPS's favor on Safway's counterclaim. Because judgment will be granted in MPS's favor, we need not address whether the trial court erroneously exercised its discretion when it denied MPS's motion to amend its answer to the counterclaim to include a statute of frauds defense.

## BACKGROUND

¶ 2. This case involves injuries that James A. Holzbauer, an employee of MPS, suffered when he fell through some scaffolding as Holzbauer and other employees were painting the ceiling of an elementary school gymnasium. Holzbauer was injured when he fell from a height of seventeen feet, through a gap between the scaffold platform and a guardrail. Safway supervised the erection of the scaffolding, which it owned and rented to MPS.

¶ 3. Additional background on the painting crew and how the scaffolding came to be erected is essential to an understanding of the resolution of this case. Holzbauer is employed by MPS as a member of a paint crew. The crew reports to a crew leader. The leader reports to a foreman. The foreman reports to a paint shop manager. The manager reports to the Director of Facilities and Maintenance Services, who reports to the superintendent of schools, who reports to MPS.

¶ 4. Tim Schein, the crew leader, with permission from his foreman, contacted Safway to get a bid for scaffolding rental so the gymnasium ceiling could be painted. Safway later faxed a price proposal, and a drawing of the proposed scaffolding, to Schein. This faxed document was never signed by anyone at MPS or

253

Safway. The record discloses no discussion between anyone from MPS and anyone from Safway of the terms or conditions contained in two columns of fine print on the back of the proposal document.

¶ 5. Schein later called Safway and left a telephone message that the "quotation" had been accepted and disclosed a purchase order number generated within the MPS system. According to the Director of Facilities and Maintenance Services, Richard Moore, it is ordinarily necessary for a management person to authorize a purchase order.[1] Moore also testified that the terms and conditions of contracts entered into with vendors were limited only to the terms contained in the purchase order, unless "somebody in an administrative position would have reviewed and authorized a different type of contract." In this particular instance, the purchase order document was never delivered to Safway or signed by anyone from Safway, and there is no evidence that anyone in an administrative position reviewed and authorized any other type of contract. Nonetheless, the scaffolding was delivered to MPS.

¶ 6. David Kastel, a Safway employee, supervised assembly of the scaffolding. After the scaffolding was assembled, and before he left the school, Kastel presented a printed form and asked that someone employed by MPS sign it. On the front of the pages, all of the equipment delivered was identified, the MPS purchase order number had been inserted, and the upper right hand corner of the document was labeled "Rental

---

[1] Although Moore acknowledged that no written document existed that stated who had authority to authorize a purchase order for services totaling less than $5000, he said he believed a number of people (*e.g.,* the manager of environmental services) had authority to execute those contracts. Painters and crew leaders were not among those persons he identified.

Agreement." The back of the document contained two columns which comprise over thirty paragraphs of terms and conditions, including the hold harmless and indemnification obligations which purport to bind MPS to "indemnify and hold harmless" Safway "from all actions, claims, costs, damages, liabilities and expense, including reasonable attorneys' fees" which result from anything except "the sole negligence of Safway."[2]

¶ 7. Chris Vanderlois, a member of the paint crew, complied with Kastel's request and signed the form. There is no evidence in the record that the indemnification clause, or any other clauses in the fine print on the back, were ever mentioned to, or discussed with anyone employed by MPS at any time prior to this litigation. Vanderlois testified that he believed he was only signing a "form" acknowledging receipt of the scaffolding.

¶ 8. As a result of his fall, Holzbauer suffered serious injuries that resulted in medical bills of over $450,000. Holzbauer sued Safway, alleging that it was negligent in the utilization, installation and construction of the scaffolding. Holzbauer also named the City of Milwaukee as a plaintiff. Later, the parties stipulated to substitute MPS for the City of Milwaukee, after agreeing MPS was the true party in interest.

¶ 9. Safway filed a counterclaim, alleging that MPS had to indemnify Safway consistent with the indemnification clause that was contained in Safway's initial bid to do the work and in a rental agreement—the one that MPS refers to as a "delivery ticket"—that was signed by Vanderlois.

---

[2] Apparently, under the terms of this provision, even if the jury were to determine that Safway was ninety-five percent negligent, Safway would still be entitled to complete indemnification from the renter.

¶ 10. Safway moved for summary judgment, seeking dismissal of James and Theresa Holzbauer's claims against it and seeking an order requiring MPS to indemnify and defend Safway in this action. The trial court held a hearing on the motions and denied Safway's motion with respect to the Holzbauers.[3]

¶ 11. With respect to Safway's motion that MPS indemnify it, the trial court decided to take the motion under advisement. Several weeks later, MPS filed a motion for leave to amend its answer to assert the affirmative defense of statute of frauds. It asserted that the reason for its motion had been prompted by a "concession" made by counsel for Safway at the hearing on Safway's summary judgment motion. MPS explained:

> It was at that hearing for the first time that counsel for Safway indicated to this Court that it no longer need consider the "delivery ticket" as anything more than a receipt for the delivery of materials. This, of course, was the only written document, that was signed by anyone employed by the Board. It was signed, however, merely by a painter, that is, a member of the painting crew employed by the Board. Apparently realizing that this particular document could never serve as a written agreement binding the Board to any indemnification provision contained in that document, Safway's counsel simply asked this Court not to consider that written document, and only to consider a previously provided price quotation from Safway that was faxed to the Board.
>
> That previously-provided price quotation was not signed by anyone from Safway. It was also never signed

---

[3] The specifics of Safway's motion with respect to the Holzbauers, and the bases for denying it, are not relevant to this appeal and will not be addressed.

256

by anyone on behalf of the Board. All that occurred with respect to that document was some telephone call from a paint crew leader to Safway in which the paint crew leader may have indicated that the Board had accepted Safway's proposal.

The thrust of the remainder of Safway's argument in the summary judgment motion hearing, therefore, was that this oral statement constituted a binding acceptance of all of the terms of Safway's rental agreement, including the indemnification provision. Under Wisconsin law, however, such a contract is void as it violates the statute of frauds. It is, therefore, not binding on the Board because it was not signed by a duly authorized representative of the Board.

¶ 12. In addition to seeking leave to amend its answer to assert a statute of frauds defense, MPS also moved for summary judgment in its favor with respect to Safway's counterclaim for indemnification.

¶ 13. Three days later, the trial court issued a written decision granting Safway's motion for summary judgment on its counterclaim against MPS. The trial court concluded that the rental agreement's indemnification agreement was enforceable against MPS because "no MPS employee had exclusive designated authority to contract on behalf of MPS for projects with an estimated cost of less than $10,000." The trial court further found that the language of the indemnification agreement was enforceable against MPS.

¶ 14. MPS filed an amended motion for leave to amend its answer to Safway's counterclaim and for reconsideration of the trial court's order granting Safway summary judgment on its counterclaim. In response, Safway contested MPS's assertion that Safway had conceded the ineffectiveness of its rental agreement with MPS. Safway explained:

[MPS] relies upon 29 words uttered by Safway's counsel in response to a question by the Court during a hearing that required 129 pages to transcribe. When read in its entirety, the answer to the question demonstrates counsel's belief that the summary judgment motion was meritorious regardless of whether [the painter] was authorized to sign the contract for MPS. Safway merely argued in the alternative – as it had in its briefs. Either the contract was formed when MPS issued the purchase order number or when [the painter] alternatively accepted the contract for MPS or ratified the earlier acceptance. Safway's response to the Court's question simply does not qualify as a judicial admission.

¶ 15. The trial court heard argument on MPS's motions and denied both of them.[4] The trial court's orders granting judgment in Safway's favor and denying MPS's motion for reconsideration were based in part on its conclusion that MPS had not established that Vanderlois, the painter who signed the rental agreement, lacked authority to enter into the contract in question. We granted MPS's request for an interlocutory appeal of the trial court's orders.

## STANDARD OF REVIEW

¶ 16. Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court

---

[4] The Holzbauers took no position with respect to the merits of the motions and are not parties to this appeal.

under Wis. Stat. § 802.08 (2003–04).[5] *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That methodology is well known, and need not be repeated here. *See* § 802.08; *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

## DISCUSSION

¶ 17. At issue is the trial court's ruling that MPS must indemnify Safway. This ruling was based on the trial court's conclusion that "[b]ecause there is no specific statute or rule delegating authority to enter into this contract, MPS cannot challenge the authority [the painters] Schein and Vanderlois had to enter into the contract." We conclude that this ruling is contrary to the applicable law.

¶ 18. Municipal entities are created by, and derive their power from, the state legislature. Wisconsin statutes define the duties and powers of the Board of School Directors in a city of the first class (*i.e.,* Milwaukee). Wisconsin Stat. §§ 119.16 and 119.50 contain the following descriptions of duties and payment responsibilities relevant to this case:

**119.16 Board; duties.**

. . . .

**(1m)** Management of school district. The board shall have the possession, care, control and management of the schools, facilities, operations, property and affairs of the school district.

. . . .

---

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

**(3)** BUILDINGS AND SITES. (a) *The board shall* construct, purchase, lease, *improve or enlarge buildings* and purchase furniture and sites for the public schools, shall purchase, install and maintain heating systems in public schools *and may contract for carrying out any of these purposes.*

**119.50 Disbursement of moneys. (1)** *All moneys received* by or raised in the city *for school district purposes* shall be paid over to the city treasurer. Such moneys *shall be disbursed* by the city treasurer *on the written order of the superintendent of schools,* countersigned by the auditing officer of the city.

(Emphasis added.)

¶ 19. As the above statutes provide, the legislature has been quite specific in granting power and duties to the entity that is generally known as MPS. In describing the general purpose of statutes regulating municipal entities, the Wisconsin Supreme Court has observed that "[t]he limitations upon the authority of municipal officers to enter into contracts, and prescribed methods for the exercise of such power, are for the protection of the public, and such provisions will not be permitted to be invoked to the harm of the public[.]" *Center Drainage Dist. v. Capitol Indem. Corp.*, 33 Wis. 2d 294, 299, 147 N.W.2d 245 (1967) (citation omitted). Delegation of the entity's authority to contract, because it ultimately obligates the taxpayers, must be clearly and specifically described by the entity. Indeed, even the Milwaukee City Attorney—unlike most attorneys who have the power to bind clients as their agents—may not enter into a settlement agreement as an attorney/agent of the city without specific authority from the Milwaukee Common Council to do so. *See Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 59,

452 N.W.2d 360 (1990). And one who would contract with a municipal entity is bound by "the common-law rule that one who deals with a municipality does so at his own risk and may be subject to any provisions of law that might prevent him from being paid by a municipality even though the services are rendered." *Menzl v. City of Milwaukee*, 32 Wis. 2d 266, 274, 145 N.W.2d 198 (1966).

¶ 20. The burden of proof to establish compliance with relevant law is on the person seeking to enforce a contract with a municipality. *See Ellerbe & Co. v. City of Hudson*, 1 Wis. 2d 148, 158, 85 NW 2d 663, (1957) (per curiam) ("The burden of proof was upon the plaintiff to establish an effective ratification by the council of the contract entered into between the hospital trustees and the plaintiff."). In this case, the trial court referred to *Ellerbe,* and acknowledged the authority of a unit of municipal government to specifically delegate contracting authority. However, the trial court held:

> Because there is no specific statute or rule delegating authority to enter into this contract, MPS cannot challenge the authority [the painters] Schein and Vanderlois had to enter into the contract.

¶ 21. We disagree with the trial court's conclusion that, because at the time of this incident MPS had *not* specifically delegated authority to enter into contracts involving less than $10,000, Schein and/or Vanderlois had the authority to enter into those contracts. Such is not the law.

¶ 22. The trial court misapplied the rule outlined in *Ellerbe*. Unless the power to bind the municipality

261

financially has been specifically delegated, the only entity with the statutory authority to contract is the municipality. *See Center Drainage Dist.*, 33 Wis. 2d at 299; *Kocinski*, 154 Wis. 2d at 59; *Menzl*, 32 Wis. 2d at 274. The trial court's erroneous view of the law effectively turned the burden of proof on its head because it required the municipality to prove that Vanderlois did *not* have authority to contract, rather than requiring Safway to prove that he did. That approach is inconsistent with applicable Wisconsin legal precedent.

¶ 23. Consistent with *Center Drainage Dist.*, *Kocinski, Menzl* and *Ellerbe*, it was the responsibility of Safway to determine whether and to whom MPS had delegated its authority to contract for the services Safway provided. Here, Safway apparently concluded that authority had been delegated to Vanderlois, a painter. We are unable to find any support in the record for that legal conclusion.

¶ 24. The statutes do not authorize anyone other than the Board to enter into contracts. The Board may delegate that authority, but it must do so clearly and specifically. Hence, for an MPS employee to have such power, it must be specifically delegated by the Board to that employee or class of employees.

¶ 25. The record is lacking any evidence that the Board ever authorized anyone to enter into an indemnification and hold harmless contract, regardless of what goods or services the employee may have had specific authority to purchase. Nor do we find undisputed evidence that at the time of this incident MPS had specifically authorized either Schein (the crew leader) or Vanderlois (the painter) or their counterparts at the same level of responsibility to purchase or rent anything on MPS's behalf.

262

¶ 26. A detailed search of the record provided to us discloses no evidence of specific delegation by MPS to employees at the level of responsibility of Vanderlois (painter) or Schein (crew leader) to enter into a contract that potentially abrogates the MPS workers compensation liability limit established by statute, or to make MPS and the taxpayers who fund it potentially responsible for the negligence and attorney fees of third parties. To hold that a municipal employee has the authority to "agree" to those extraordinary liabilities, obscured in the fine print on the back of a form which appears at casual reading only to document an otherwise limited contract for goods or services, would effectively make municipalities incapable of managing their liability. If a painter, without specific written authority, can enter into such an agreement on behalf of a municipality, why not also a custodian, or a bus driver, or any employee with even the most minimal authority to buy supplies of modest value? Such an outcome would, no doubt, astonish taxpayers and fly in the face of the rationale articulated by our supreme court for strict compliance with the limited authority granted to municipal entities.

¶ 27. In searching the record for undisputed facts upon which the grant of summary judgment might have been based, we find no facts that clearly and specifically establish a specific delegation by MPS of contracting authority to painters and/or crew leaders. In the absence of this evidence, Safway cannot compel MPS to indemnify it. Consequently, MPS is entitled to judgment in its favor on Safway's counterclaim.

*By the Court.*—Orders reversed and cause remanded with directions.