Glen D. Hocking and Louann Hocking,
Plaintiffs-Appellants-Petitioners,

v.

City of Dodgeville, Defendant-Respondent,

Charles C. O'Rourke, Joan R. O'Rourke,
American Family Mutual Insurance Company,
Amy Crubaugh-Schrank, Shaun Sersch,
Wendy Sersch and Germantown Mutual
Insurance Company, Defendants.

Supreme Court

*No. 2008AP2812. Oral argument March 3, 2010.
—Decided July 2, 2010.*

2010 WI 59

(Also reported in 785 N.W.2d 398.)

For the plaintiffs-appellants-petitioners there were briefs by *Sheila Stuart Kelley, Christopher D. Stombaugh, Tyler T. Kieler,* and *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP,* Platteville, and oral argument by *Christopher D. Stombaugh.*

For the defendant-respondent there was a brief by *Peggy E. Van Horn and the Law Offices of Thomas P. Stilp,* Brookfield, and oral argument by *Peggy E. Van Horn.*

¶ 1. MICHAEL J. GABLEMAN, J. This case comes before us on review of a published decision of the court of appeals[1] affirming the circuit court's order of summary judgment in favor of the City of Dodgeville in a lawsuit against it by Glen and Louann Hocking ("Hockings") for damage to their property. The Hockings claimed that the City was negligent in the design, plotting, approval, and development of a subdivision adjacent to their property and that negligence caused significant water damage to their property. The City asserted that the suit was barred under Wis. Stat. § 893.89 (2007–08),[2] which imposes a ten-year statute of repose on actions for injury resulting from improvements to real property. Both the circuit court and court of appeals agreed with the City that the statute of repose applied.

¶ 2. The specific issue before us is whether either of two exceptions contained in § 893.89 apply and therefore allow the Hockings' suit to proceed.[3] First, the Hockings allege that the City expressly warranted or guaranteed the improvement to real property under § 893.89(4)(b). The Hockings also assert that the City was negligent in the maintenance, operation, or inspection of the improvement to real property under § 893.89(4)(c). If either of these two exceptions applies, the ten-year statute of repose would not bar the Hockings' suit.

---

[1] *Hocking v. City of Dodgeville*, 2009 WI App 108, 320 Wis. 2d 519, 770 N.W.2d 761.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[3] The Hockings do not assert that the exception to the statute of repose outlined in Wis. Stat. § 893.89(4)(d), which allows suits beyond the ten-year statute of repose if damages were sustained before April 29, 1994, is applicable.

¶ 3. We conclude that neither § 893.89(4)(b) nor § 893.89(4)(c) applies, and the Hockings' suit is therefore barred by the ten-year statute of repose in Wis. Stat. § 893.89. Section 893.89(4)(b) does not apply because the Hockings have not shown that the City of Dodgeville itself made any express warranty or guarantee regarding the improvements. Section 893.89(4)(c) does not apply because the City has not been negligent in maintaining, operating, or inspecting the improvements. Accordingly, we affirm the court of appeals and hold that the circuit court properly granted summary judgment for the City, thereby dismissing the Hockings' suit.

## I. BACKGROUND

¶ 4. The following facts are undisputed for the purposes of this appeal.

¶ 5. In 1978, Glen and Louann Hocking purchased a home situated on a small parcel of land at 216 Swayne Street in Dodgeville, Wisconsin. At the time of purchase, the nearest residence to the Hocking property was a farm house 200 or 300 feet away.

¶ 6. In 1989, Wallace Rogers purchased property adjacent to the Hockings' land, which at the time was largely undeveloped and covered with trees. Rogers planned to develop the property into a subdivision with multiple lots. In order to complete this project, he hired professional engineer Lawrence E. Schmit to design the subdivision. The City of Dodgeville also contracted with Schmit to design and install streets and sewers; this involved laying out the roadways, curbs, and street gutters for the proposed development.[4] Rogers named the completed development the "Lorraine Subdivision."

---

[4] In his deposition, Schmit said he was not a contractor, but rather a "consultant" for the City. He stated that he was the only

¶ 7. The terrain of the proposed subdivision was uneven, and Schmit had to bring in large amounts of landfill to level the land and build up the places where the homes would sit. This landscaping created a steep slope that ran downhill to the Hockings' property.

¶ 8. Prior to the development of the subdivision, Glen Hocking spoke with Corny James, a member of the City of Dodgeville Common Council. Hocking informed James that he was concerned about the steep gradation that he anticipated would result from building the subdivision. Despite the Hockings' concerns, the City approved the plans for the development on July 16, 1991. Throughout the construction of the Lorraine Subdivision, Mr. Hocking continued to informally speak with the city engineer and various common council members who assured him that if a problem arose, it would be addressed by the City.

¶ 9. On September 12, 1992, the Lorraine subdivision was completed, and the owners of the individual lots were allowed to occupy their property. Schmit's final contact with the subdivision was on June 3, 1993, when the final coat of blacktop was laid over the asphalt on Roelli Lane, one of the subdivision's main streets.

¶ 10. The Lorraine Subdivision significantly impacted the physical condition of the Hockings' property. Before its development, the Hockings experienced no flooding problems in their yard or basement. But around 1992 or 1993, they began to notice water in their yard, and over time storm water run-off began to collect both inside and outside the Hockings' residence, causing damage to their home and erosion of their land. They had to install a sump pump in order to capture the

---

engineer in town and thus people considered and referred to him as the city engineer, though he was never an actual employee of the City.

water, but even that only partially mitigated the problem. In 1995, the Hockings' basement completely flooded. Moreover, water damage throughout the 1990's caused mold to develop inside their home.

¶ 11. From the early-1990's until 2003, Mr. Hocking frequently spoke with elected officials and employees of the City (collectively "city officials") who continued to assure him the problem would be resolved. Several city officials, including members of the common council, even visited the Hockings' home to inspect the damage. The council members assured the Hockings that the problem would be addressed. At one point, the City considered installing a drainage system or a moat, either of which Mr. Hocking readily approved, but no action was taken to follow through on installing either. At some point in 2003 the city engineer[5] and the city assessor advised Mr. Hocking that the City could not resolve the flooding issue.

¶ 12. The Hockings brought this action against the City, Rogers, and Schmit on August 22, 2006, in the Circuit Court for Iowa County, Edward E. Leineweber, Judge. The Hockings asserted claims of negligence, and negligent and intentional creation and maintenance of a nuisance.

¶ 13. The three defendants moved for summary judgment on the ground that Wis. Stat. § 893.89 bars this action because it was filed more than ten years after the substantial completion of the subdivision. The Hockings argued that they received express guarantees from the City that it would resolve the situation, and therefore, pursuant to § 893.89(4)(b), the statutory bar

---

[5] The record reflects that Lawrence Schmit was sometimes called the city engineer but was never an actual employee of the City (see supra note 4). It appears that in 2003 the City employed Mike Risbach in that capacity.

did not apply. They also contended that the suit could move forward pursuant to § 893.89(4)(c) because the City owned and controlled the subdivision streets and was negligent in maintaining a nuisance.

¶ 14. The circuit court rejected the Hockings' arguments and concluded that the statutory bar did apply. With respect to Wis. Stat. § 893.89(4)(b), the court found that there was no evidence of an express warranty or guarantee approved by the City of Dodgeville Common Council; therefore, that exception did not apply. In analyzing § 893.89(4)(c), the court assumed that the City was negligent in its approval of the design and construction of the subdivision, but it rejected the Hockings' argument that the City's failure to redesign or reconstruct the improvement constituted "negligence in the maintenance . . . of [the] improvement" within the meaning of that subsection. Accordingly, the circuit court granted summary judgment in favor of the City, Rogers, and Schmit, and dismissed the complaint.

¶ 15. The Hockings appealed only the dismissal of the City. In a published decision, the court of appeals affirmed. *Hocking v. City of Dodgeville*, 2009 WI App 108, 320 Wis. 2d 519, 770 N.W.2d 761. It agreed with the circuit court that the city officials' statements to the Hockings did not constitute an express warranty or guarantee by the City and therefore did not fall under the exception in § 893.89(4)(b). *Id.*, ¶¶ 13–19. Assuming the City's actions negligently created and maintained a nuisance, the court of appeals likewise concluded that the City's conduct did not constitute "negligence in the maintenance, operation or inspection of an improvement to real property" under § 893.89(4)(c). *Id.*, ¶¶ 20–25.

¶ 16. The Hockings then petitioned this court for review, which we granted.

165

## II. DISCUSSION

¶ 17. This case requires us to construe Wis. Stat. § 893.89. The interpretation of a statute is a question of law that we review de novo. *Rechsteiner v. Hazelden,* 2008 WI 97, ¶ 26, 313 Wis. 2d 542, 753 N.W.2d 496.

¶ 18. When interpreting a statute, we begin with the language of the statute, because it is the language that expresses the legislature's intent. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.,* ¶ 45. We attempt, whenever possible, to give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results. *Id.,* ¶ 46.

¶ 19. Wisconsin Stat. § 893.89[6] constitutes a statute of repose in actions for injury resulting from improvements to real property. Like a statute of limita-

---

[6] Wisconsin Stat. § 893.89 provides in relevant part:

893.89 Action for injury resulting from improvements to real property.

(1) In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.

(2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of,

166

tions, a statute of repose limits the time period in which an action may be brought, but begins to run at a different time. *Landis v. Physicians Ins. Co.*, 2001 WI 86, ¶ 29, 245 Wis. 2d 1, 628 N.W.2d 893. A statute of limitations begins to run when a cause of action accrues (for example, when an injury is discovered). *Id.* A statute of repose begins to run when a defendant acts in some way. *Id.* Here, the act that triggered the statute of repose was the substantial completion of an improvement to real property. Wis. Stat. § 893.89(1). A statute of repose may "bar an action before the injury is discovered or before the injury even occurs." *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 38, 283 Wis. 2d 1, 698 N.W.2d 794.

¶ 20. Wisconsin Stat. § 893.89(2) provides in relevant part:

> [N]o cause of action may accrue and no action may be commenced . . . against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period . . . arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

---

the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

. . .

(4) This section does not apply to any of the following . . .

(b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.

(c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property. . . .

¶ 21. Subsection (1) defines the "exposure period" —the period of time in which a suit may be filed—as "10 years immediately following the date of substantial completion of the improvement to real property."

¶ 22. The parties agree that the general ten-year statute of repose in Wis. Stat. § 893.89 applies to this action. That is, the Hockings' suit is an action arising from an improvement to real property, and the Hockings brought their suit after the ten-year exposure period.[7] Wisconsin Stat. § 893.89(4)(a)-(d) creates four exceptions to which the statute of repose "does not apply." The only question before us today is whether the two exceptions outlined in § 893.89(4)(b) and (c) exempt the Hockings' suit from the ten-year limitation and allow the suit to proceed. If neither exception applies, the Hockings' suit is precluded by the statute and must be dismissed.

¶ 23. In Part A, we take up the exception contained in § 893.89(4)(b). In Part B, we evaluate whether the exception outlined in § 893.89(4)(c) allows the Hockings' suit to go forward. Because this case comes before us on summary judgment, we assume the Hockings' allegations to be true for our purposes here. *See Bank One, NA v. Ofojebe,* 2005 WI App 151, ¶ 7, 284 Wis. 2d 510, 702 N.W.2d 456. We ultimately conclude that neither exception applies, and that the Hockings' suit was properly dismissed by the circuit court.

A. Wis. Stat. § 893.89(4)(b)

¶ 24. Wisconsin Stat. § 893.89(4)(b) states that an action normally precluded by the ten-year statute of

---

[7] The work on the subdivision was substantially completed in 1992, meaning the exposure period—the period of time when a suit could be filed—expired in 2002, four years before the 2006 filing of this lawsuit.

repose may nonetheless be brought against "[a] person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee."

¶ 25. Because the Hockings have sued the City of Dodgeville, the City is the "person" here.[8] The improvement to real property in this instance is the design and installation of roads, curbs, and street gutters during the early development of the subdivision. Thus, the question is whether the City of Dodgeville expressly warranted or guaranteed its installation of the roads, curbs, and street gutters in the Lorraine Subdivision.

¶ 26. The Hockings argue that the numerous statements and assurances made by various city officials —statements and assurances which for the purposes of this appeal we assume were actually made—created an express warranty or guarantee that the water problems would be fixed. They also suggest—though the precise contours of their argument are unclear—that they reasonably relied on these statements to their detriment and that the doctrine of equitable estoppel should apply. The City asserts that it never made any warranty or guarantee, and that it cannot be held liable for the unauthorized assurances of its elected officials and employees as further discussed herein.

¶ 27. The Hockings' legal argument falls short for two reasons. First, the Hockings have not demonstrated that they received an express warranty or

---

[8] Case law suggests the "person" in this statute can be a governmental entity like a municipality. *See Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, 283 Wis. 2d 1, 698 N.W.2d 794 (applying § 893.89(4)(b) to a school district).

guarantee. Second, even if an express warranty or guarantee was made, the Hockings have not demonstrated that it came from a representative of the City authorized to bind the City.

¶ 28. Though its precise meaning can vary by context, a warranty is generally defined as "an assurance by one party to a contract of the existence of a fact upon which the other party may rely." *Dittman v. Nagel,* 43 Wis. 2d 155, 160, 168 N.W.2d 190 (1969); *Woodward Commc'ns, Inc. v. Schockley Commc'ns Corp.,* 2001 WI App 30, ¶ 14, 240 Wis. 2d 492, 622 N.W.2d 756. A warranty "is intended to relieve the promisee of any duty to ascertain the fact for himself, and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Dittman,* 43 Wis. 2d at 160; *Woodward Commc'ns, Inc.,* 240 Wis. 2d 492, ¶ 14. Most cases discussing express warranties involve sales of goods, but express warranties can also be made in connection with real property. *See Dittman,* 43 Wis. 2d at 160 (considering an express warranty of real property); *see also* Wis. Stat. ch. 411 (containing various provisions relating to express warranties in leases). The principles applicable to warranties of personal property are equally applicable to warranties of real property. *Dittman,* 43 Wis. 2d 160.

¶ 29. The warranty specified in Wis. Stat. § 893.89(4)(b) is an express warranty; this means an implied warranty is not enough. An express warranty relating to the sale of goods is created by an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or by "[a]ny description of the goods which is made part of the basis of the bargain." Wis. Stat.

§ 402.313(1)(a), (b).[9] An express warranty, then, generally requires some affirmation of fact or description regarding the goods or services that becomes a basis for a bargain between the parties and has the natural tendency to induce the buyer to purchase the goods or services. *See Ewers v. Eisenzopf,* 88 Wis. 2d 482, 489, 276 N.W.2d 802 (1979); *Brown v. Gen. Motors Corp.,* 355 F.2d 814, 818 (4th Cir. 1966). Though formal words like "warranty" or "guarantee" are not required to create an express warranty, the burden is on buyers (in the sale of goods or services) to prove their purchase was made based on the factual representations. *Ewers,* 88 Wis. 2d 487–89.

¶ 30. A "guarantee" can have multiple meanings depending on the context. Sometimes "guarantee" is used synonymously with "warranty." *See Consol. Papers, Inc. v. Dorr-Oliver, Inc.,* 153 Wis. 2d 589, 595 n.4, 451 N.W.2d 456 (Ct. App. 1989) (analyzing an express warranty that describes itself as a "warranty or guarantee"); *Frantl Ind., Inc. v. Maier Constr., Inc.,* 68 Wis. 2d 590, 595–96, 229 N.W.2d 610 (1975) (alternately describing the claim at issue as a "warranty" and a "guarantee"). Black's Law Dictionary defines "guarantee" as "[t]he assurance that a contract or legal act will be duly carried out." *Black's Law Dictionary* 772 (9th ed. 2009). A guarantee is usually seen "in the context of consumer warranties or other assurances of quality or performance." *Id.*

¶ 31. In this case, even if the statements alleged by the Hockings were in fact made, we do not see evidence of an express warranty or guarantee. These

---

[9] Providing a sample or model that is made part of the bargain can also create an express warranty under the UCC. *See* Wis. Stat. § 402.313(1)(c).

concepts sound in contract, and there was never any contractual or other relationship between the City and the Hockings. The Hockings' interest stemmed from the possible effects of the subdivision, not from any direct stake in it.

¶ 32. Additionally, because there was no written contract between the Hockings and the City, an express warranty could be created only if the Hockings were induced to rely on the promises such that the express warranty was a basis for a bargain. *See Selzer v. Brunsell Bros., Ltd.,* 2002 WI App 232, ¶¶ 13–14, 257 Wis. 2d 809, 652 N.W.2d 806. There simply was no bargain here. While the Hockings may have deferred legal action based upon the informal representations of various city officials, the representations did not induce the Hockings to come to an agreement with the City on anything.

¶ 33. In the context of § 893.89(4)(b), the express warranty or guarantee is clearly referring to an assurance of quality by the one designing or constructing the improvement, likely for a defined period of time. Hence, the statute allows an express warranty or guarantee to outlive the statute of repose "for the period of that warranty or guarantee." § 893.89(4)(b). Such an express warranty or guarantee is not present here.

¶ 34. The second problem with the Hockings' argument is that none of the purported statements alleged by the Hockings came from a representative of the City of Dodgeville authorized to bind the City. Accordingly, even if we assume these statements constituted an express warranty or guarantee, the Hockings simply cannot show that the express warranties or guarantees were binding upon the City of Dodgeville.

¶ 35. In order to decide this case, we need not determine the precise boundaries of when a municipal-

ity can be said to have acted in its official capacity. However, given the facts in the present case, it is clear that the City of Dodgeville did not act at all.

¶ 36. Municipal entities such as the City of Dodgeville are created by and derive their authority from the state legislature. *Holzbauer v. Safway Steel Prods., Inc.,* 2005 WI App 240, ¶ 18, 288 Wis. 2d 250, 708 N.W.2d 36. The burden of proving that the City acted in a particular manner is on the Hockings. *See id.,* ¶ 20. Moreover, the power to act on behalf of the City is reserved to the City itself, unless that power has been specifically delegated. *Id.,* ¶ 22 ("Unless the power to bind the municipality financially has been specifically delegated, the only entity with the statutory authority to contract is the municipality.").

¶ 37. In *Probst v. Menasha,* the City of Menasha entered into a contract with the plaintiff to build new sidewalks and repair old ones. 245 Wis. 90, 91–92, 13 N.W.2d 504 (1944). During the work, the plaintiff was instructed by the city engineer and a special committee of the common council to use additional sand as fill under the sidewalks. *Id.* at 92. The city engineer assured the plaintiff that he would be reimbursed by the city for the excess sand. *Id.* at 92–93. Later, the City of Menasha refused to pay on the grounds that the contract specified that the plaintiff was to furnish sufficient filling as necessary. *Id.* at 93.

¶ 38. We agreed with the City of Menasha that the original contract was not modified by the engineer's promise: "We are cited to no statute and we know of none that confers authority upon the city engineer or the street committee of the common council to modify the terms of a contract entered into by a city in the manner prescribed by statute." *Id.* at 94. Thus, even

though the plaintiff was following the direction and instruction of the city engineer, we found that the City of Menasha could not be held liable for the representations of the city engineer and special committee of the common council when, in these matters, the City of Menasha could only act through means prescribed by statute. *Id.* "[A] city," we held, "cannot become liable except in some manner authorized by law." *Id.*

¶ 39. Thus, city officials, such as employees and individual members of the common council, cannot, through representations that problems will be solved, bind the City to resolve those problems unless they act or make their representations with the authority to bind the City.

¶ 40. The Hockings counter that official action by the City is not necessary for the City to be deemed to have acted. They assert that the statute contains no such requirement for official action, and that the Hockings should not be penalized for relying to their detriment on the empty promises of city officials. Just because the warranty or guarantee is not enforceable, the Hockings argue, does not mean it was not made.

¶ 41. The Hockings really appear to be arguing that the exception for express warranties and guarantees in § 893.89(4)(b) functions as a sort of equitable estoppel.[10] Equitable estoppel is established when one

---

[10] The Hockings' equitable estoppel argument is confusing. They admit that § 893.89(4)(b) is not drafted to function like equitable estoppel, and they assert that they are not claiming equitable estoppel. Nonetheless, they argue that they satisfy the requirements of an equitable estoppel claim. In addition, their argument for the applicability of § 893.89(4)(b) seems to rest largely on an interpretation that is materially indistinguishable from equitable estoppel.

174

party demonstrates that it was induced by some action or non-action of another party, and reasonably relied to its detriment. *Kamps v. DOR*, 2003 WI App 106, ¶ 20, 264 Wis. 2d 794, 663 N.W.2d 306.

¶ 42. The equitable estoppel argument falls short on at least two grounds. First, for the reasons stated above, the statute's exception for only express warranties and guarantees makes clear that it is not intending to create an equitable estoppel-like catch–all provision. Second, the City took no action or non-action in this case that could have induced reliance. Any inducement reasonably relied on by the Hockings was made by those who did not and could not act or make representations on behalf of the City. For these reasons, the Hockings' equitable estoppel argument fails.

¶ 43. In sum, the Hockings have not met their burden of proving that the City of Dodgeville made an express warranty or guarantee to the Hockings regarding its construction of the roads, curbs, and street gutters in the Lorraine Subdivision. Therefore, the Hockings' suit does not meet the exception to the statute of repose found in Wis. Stat. § 893.89(4)(b).

## B. Wis. Stat. § 893.89(4)(c)

¶ 44. The second exception at issue in this case is outlined in § 893.89(4)(c). It states that the ten-year statute of repose does not apply to actions for damages "resulting from negligence in the maintenance, operation or inspection of an improvement to real property" by the "owner or occupier of real property."

175

¶ 45. Here, the "owner or occupier of real property" is the City.[11] As already discussed, the "improvement to real property" is the building of the roads, curbs, and street gutters in the Lorraine Subdivision. In order for this exception to apply, the City would need to be negligent "in the maintenance, operation or inspection" of the roads, curbs, and street gutters.

¶ 46. The dispute regarding § 893.89(4)(c) boils down to what it means to maintain the roadways, which we assume for our purposes here do constitute a nuisance. The Hockings argue that the roadways constitute a nuisance due to the water damage they caused and continue to cause to their property. Thus, they assert that the City created and is now maintaining a nuisance. The City argues that maintaining the improvement means keeping the improvement in good repair and operation, which the City has done.

¶ 47. The text of the statute distinguishes between suits arising from "design" or "planning" defects, which explicitly fall within the statute of repose,[12] and suits arising from negligent maintenance of the property under § 893.89(4)(c). If the improvement causes damage due to poor design, a plaintiff has ten years to assert his or her rights. Construing the phrase "main-

---

[11] The parties did not address whether the City of Dodgeville is an "owner or occupier" of the roads, curbs, and street gutters within the meaning of § 893.89(4)(c). We assume here, but do not decide, that the City is such an owner or occupier.

[12] Wisconsin Stat. § 893.89(2) states in relevant part:

[N]o cause of action may accrue and no action may be commenced . . . against the owner or occupier of the property . . . after the end of the exposure period . . . arising out of any *deficiency or defect in the design, land surveying, planning,* supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. (Emphasis added.)

176

tenance, operation or inspection of an improvement to real property" to mean maintenance or operation of a nuisance would create an exception that swallows the rule. This is so because every improvement that is negligently designed could be considered an ongoing nuisance that the owner or operator negligently maintains by failing to correct.

¶ 48. Our interpretation also accords with the generally understood meaning of "maintenance." The American Heritage Dictionary defines "maintenance" as "[t]he work of keeping something in proper condition; upkeep." *American Heritage Dictionary* 1084 (3rd ed. 1992).

¶ 49. Thus, when an improvement to real property creates a nuisance, a party has ten years from the substantial completion of that improvement to bring suit. Section 893.89(4)(c) applies, however, when an improvement to real property is completed, but the owner or occupier is negligent in the maintenance, operation, or inspection of it, thus causing damage. It does not apply to *proper* maintenance of an improvement when it is the improvement itself that causes injury.

¶ 50. We conclude that the alleged negligence was in the planning and design of the roadways. There is no evidence that the City has been negligent in maintaining the roadways following their construction. In short, the facts alleged by the Hockings do not place their suit within the exception contained in § 893.89(4)(c).

## IV. CONCLUSION

¶ 51. Unfortunately, this case bears out the common law warning that one who deals with a municipality does so at his or her own risk. *Holzbauer,* 288 Wis. 2d

250, ¶ 19. But these assertions do not bring the Hockings' suit in this case within the exceptions to the ten-year statute of repose. In creating this statute, the legislature made a policy choice that legitimate injuries would be without a remedy at law ten years after the substantial completion of an improvement to real property, regardless of when the injuries were suffered or the defect discovered. Though statutes of limitation and repose have important benefits, they do have their costs.

¶ 52. We conclude that neither § 893.89(4)(b) nor § 893.89(4)(c) applies, and the Hockings' suit is barred by the ten-year statute of repose in Wis. Stat. § 893.89. Section 893.89(4)(b) does not apply because the Hockings have not shown that the City of Dodgeville itself made any express warranty or guarantee regarding the improvements. Section 893.89(4)(c) does not apply because the City has not been negligent in maintaining, operating, or inspecting the improvements. Accordingly, we affirm the court of appeals and hold that the circuit court properly granted summary judgment for the City, thereby dismissing the Hockings' suit.

*By the Court.*—The decision of the court of appeals is affirmed.