COURT OF APPEALS
DECISION
DATED AND FILED

**May 22, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1492**

Cir. Ct. No. **2024SC216**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

JALAL KAREEM KHOURY,

PLAINTIFF-APPELLANT,

V.

AMERICAN HONDA MOTOR CO. INC.,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed and cause remanded with directions*.

¶1 BLANCHARD, J.[1] This is a small claims action. Jalal Kareem Khoury claims that American Honda Motor Co., Inc. ("Honda") breached the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

warranty on an Odyssey minivan that Khoury bought new in 2020. Khoury alleges that the minivan has a defect which causes strikingly asymmetrical and potentially hazardous wear to the tread patterns on all four of its tires, and that Honda failed to remedy the issue under a general bumper-to-bumper three-year or 36,000-mile warranty.

¶2 Immediately after Khoury was briefly examined and cross-examined at a de novo trial to the circuit court, the court granted Honda's motion to dismiss his suit. The court stated two alternative grounds for dismissal.

¶3 The circuit court concluded that Khoury's claim is barred because the warranty limits coverage for "wheel balancing and wheel alignment" to issues that arise within one year or 12,000 miles of purchase, and it is undisputed that Khoury did not notify Honda of the problem until about two years and nearly 36,000 miles after purchase. I conclude that the "wheel balancing and wheel alignment" warranty limitation does not foreclose Khoury's claim. Khoury's claim is not that the minivan's wheels are not properly balanced or aligned; instead, he alleges that the tire tread problem occurs even on wheels that are aligned to the manufacturer's specifications, and that the problem arises from a suspension issue.

¶4 In the alternative, the circuit court ruled that, in order to show a defect in the minivan, Khoury was obligated to offer expert testimony at the trial about the cause of the tread wear. The court concluded that Khoury lacked the evidence that he needed to satisfy his burden of proof because, rather than have an expert testify, Khoury sought to prove the warranty breach solely through his testimony and exhibits, possibly supplemented by cross-examination of a defense expert who was present at the trial. I conclude on this issue that because the rules

governing expert testimony, like most evidentiary rules, do not apply in small claims cases, the circuit court erred in disqualifying Khoury from offering testimony about the cause of the tread pattern wear and in requiring him to present expert testimony.

¶5      Accordingly, I reverse the circuit court order dismissing the case and remand for a new trial.[2]

## BACKGROUND

¶6      Pertinent allegations of fact come from an exhibit that Khoury prepared and submitted to the circuit court and from his limited testimony at the de novo trial.  I rely on Khoury's allegations given the posture of the litigation.  The parties properly treat the circuit court's dismissal of the case as a grant of Honda's motion to dismiss at the close of the plaintiff's evidence under WIS. STAT. § 805.17(1).  Therefore, if the circuit court made findings of fact, I would defer to any that were not clearly erroneous, giving due regard to the court's opportunity to assess the credibility of witnesses.  Sec. 805.17(2); *see also* ***Meas v. Young***, 138 Wis. 2d 89, 95 n.4, 405 N.W.2d 697 (Ct. App. 1987) (the circuit court is not required to view the evidence in the light most favorable to the plaintiff on a motion to dismiss at the close of plaintiff's case); ***Household Utilities, Inc. v. Andrews Co.***, 71 Wis. 2d 17, 24-25, 236 N.W.2d 663 (1976) (a court considering such a motion may make factual findings and dismiss the case if the court

---

[2] Honda's brief on appeal does not comply with WIS. STAT. RULE 809.19(8)(bm), which states that a brief "must have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover."  Our supreme court explained when it amended the rule in 2021 that the pagination requirements avoid "the confusion of having two different page numbers" on certain pages of an electronically filed brief.  S. Ct. Order 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).

concludes that the plaintiff fails to establish a prima facie case). But, as discussed below, the court's dismissal rested on two legal conclusions, and not on any factual or credibility findings. The court elicited only fragmentary testimony from Khoury, prevented him from testifying further, and did not purport to make factual or credibility findings. Under these circumstances, I take Khoury's representations to be true in order to place in proper context the court's alternative dispositive conclusions. The reliability and relevance of Khoury's account will be for the finder of fact to determine at a new trial following remand.

¶7     Khoury bought the 2021 Odyssey in November 2020. About two years later, Khoury brought the vehicle to an authorized Honda dealer. Its mileage was then just under 36,000 miles. Khoury informed service personnel of the following. A few days earlier, Khoury had swapped out the minivan's original tires for a set of winter tires. When he did that, he noticed that the inner edge of the tread pattern on each of the four tires (the edge of each tread closest to the centerline of the minivan running front to rear) was worn to the point that no tread pattern remained. The rest of each tread retained substantial pattern depth. Khoury's exhibits contain illustrative photographs of the tires.

¶8     The service manager had the minivan's wheel alignments checked against the manufacturer's specifications. One wheel was only slightly out of specification. Khoury and a Honda Customer Care representative later agreed that the condition of this one wheel could not cause the abnormal wear to the tread on all four tires. The service manager further informed Khoury that there were no adjustments that would bring the one wheel into alignment, but the manager offered to replace suspension parts in an effort to bring it into alignment. However, the manager also said that this work would not be covered by the warranty on the minivan; Khoury would have to pay for it himself. Khoury

declined to replace suspension parts at his own expense. The service manager and the Customer Care representative both eventually informed Khoury that Honda would not provide service under the warranty to address the issue that Khoury identified involving abnormal tread wear on all four tires.

¶9    Khoury sought mediation with Honda through the Wisconsin Department of Agriculture, Trade and Consumer Protection, but Honda did not respond to that agency's overtures. Khoury then filed this action seeking his anticipated cost for replacing tires over the life of the vehicle and other expenses. A court commissioner heard the matter and found for Khoury; Honda timely requested a de novo trial in the circuit court.

¶10    Khoury represented himself in the circuit court trial. The court had Khoury sworn, and briefly examined him, before permitting Honda to cross-examine him. During the court's limited questioning of Khoury, the court took the position that "[t]he average layperson does not know what causes uneven tire wear," that persons who have "that knowledge[,] … are called 'expert witnesses,'" and that such an expert would be needed to educate a finder of fact as to "why" uneven tire wear occurs. Specifically, the court said that Khoury needed as an expert witness someone "with knowledge to explain to me why this is a Honda-vehicle issue and not a tire issue[.]"

¶11    On cross-examination, Honda's counsel introduced the warranty booklet associated with the minivan, and Khoury agreed that it limits coverage for "wheel balancing and wheel alignment" to within one year or 12,000 miles of sale.

¶12    The circuit court gave two reasons for granting Honda's motion to dismiss. First, the court said that the warranty does not apply because Khoury did not bring the issue to the attention of a Honda dealer within one year of his

purchase of the vehicle. Second, the court concluded that the cause of the wear to the tread patterns presents "a very complicated issue" that is not "within a layperson's knowledge." Khoury appeals.

## DISCUSSION

¶13 As noted above, in reviewing the circuit court's grant of a motion to dismiss at the close of plaintiff's case under WIS. STAT. § 805.17(1), an appellate court defers to circuit court findings of fact unless they are clearly erroneous. Here, the court dismissed Khoury's claim not based on any factual or credibility findings, but based on two alternative legal conclusions: (1) that the applicable warranty coverage lasted only one year and that Khoury failed to raise the tread-wear issue with an authorized Honda dealer within one year of purchasing the minivan; and (2) that Khoury needed an expert witness to testify as to why the abnormal tire wear occurred.

### I. Warranty Issue

¶14 The interpretation of a warranty, like the interpretation of other contracts, presents an issue of law that is subject to de novo review on appeal. *See Dieter v. Chrysler Corp.*, 2000 WI 45, ¶15, 234 Wis. 2d 670, 610 N.W.2d 832.

¶15 The warranty at issue generally extends bumper-to-bumper coverage for three years or 36,000 miles, putting to the side Khoury's allegation that he purchased an extended warranty covering the minivan for eight years and 120,000 miles. As noted above, however, a limitation in the warranty applies to "wheel balancing and wheel alignment": "Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair." The circuit court concluded, and Honda maintains

on appeal, that because Khoury brought the minivan to the Honda dealer to address his tire-wear concerns after about two years and nearly 36,000 miles, the warranty does not obligate Honda to address them.

¶16     The reasoning of the circuit court, which Honda defends on appeal, misconstrues the nature of Khoury's allegations.  Khoury alleges that he brought the minivan in to the Honda dealer and lodged the complaint that something about the vehicle was causing the treads on its tires to wear unduly rapidly.  Khoury noted in his testimony that wheels in need of alignment can cause excessive tread wear, and therefore, from what he knew at the time, it was possible that having the wheels aligned would address the issue.  But, when the service manager had the alignment checked, three of the wheels were aligned to Honda's specifications, and the fourth was off by only a bit.  According to Khoury, he and the Honda Customer Care representative agreed that this small deviation in the alignment of one wheel was unlikely to be the cause of the tread wear issue on all four tires.  Also, Honda has not suggested that a problem with wheel balancing, as opposed to alignment, is to blame for the alleged abnormal tread wear.  Because Khoury does not seek compensation for wheel alignment or balancing as part of his claim, the warranty coverage limitation for these repair services does not apply.

## II.     Expert Testimony

¶17     Whether the circuit court applied the correct standard of law regarding expert testimony also presents an issue of law for de novo review on appeal.  *State v. Guerard*, 2004 WI 85, ¶20, 273 Wis. 2d 250, 682 N.W.2d 12.

¶18     Khoury began to testify at one point that his claim involves a defect in the minivan, rather than a defect in the tires, that caused the allegedly abnormal wear.  The circuit court asked, "[H]ow do you know that?  You are not an expert

7

witness." When Khoury began to respond by appearing to explain the basis for his theory, the court cut him off. The court asked who Khoury could produce "who actually understands engineering and can testify" to the matter. The court elaborated: "I don't know what causes uneven tire wear. The average layperson does not know what causes uneven tire wear. ... [S]omebody with that knowledge needs to educate—they are called 'expert witnesses'—on why that happens." After additional discussion to this effect, the court invited counsel for Honda to begin cross-examination. And, as noted previously, the court ultimately concluded that Khoury could not, without an expert, provide the testimony necessary to prove his case because "the matters … that Mr. Khoury is alleging are not matters within a layperson's knowledge."

¶19    In other words, the circuit court concluded that the nature of Khoury's claim is too far removed from general knowledge to be proved by testimony and exhibits presented by a lay witness. To be clear, the court did not dismiss Khoury's claim based on the court's assessment that the limited testimony that he was allowed to give and his exhibits were not convincing. For example, the court did not make an express or implied finding that Khoury was not credible in testifying that Honda representatives conceded to him that the alleged abnormal tread wear was not caused by an alignment problem. Instead, the court unambiguously concluded that, given the nature of Khoury's claim, he was categorically unable to give the requisite proof because he is not an expert.

¶20    It is true that in "unusually complex or esoteric" matters that are "not within the realm of the ordinary experience of mankind," a court in a large-claim civil case or criminal case can determine that the finder of fact is not able to decide the case without the benefit of expert testimony. *State v. Kandutsch*, 2011 WI 78, ¶28, 336 Wis. 2d 478, 799 N.W.2d 865 (citations and internal quotations omitted);

*superseded by statute on other grounds as stated in **State v. Jones**, 2018 WI 44, ¶30, 381 Wis. 2d 284, 911 N.W.2d 97.* At the same time, even in those contexts, a conclusion that the absence of expert testimony forecloses a party from pursuing its legal rights at a trial "is not to be taken lightly, which is why the requirement of expert testimony is an extraordinary one." ***Kandutsch***, 336 Wis. 2d 478, ¶28. Indeed, the standard for requiring expert testimony is more stringent than the standard for permitting expert testimony, which requires only that expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." WIS. STAT. § 907.02(1); *see **Weiss v. United Fire & Cas. Co.***, 197 Wis. 2d 365, 379, 541 N.W.2d 753 (1995) ("requiring expert testimony rather than simply permitting it represents an extraordinary step").

¶21 On appeal, the parties dispute whether Khoury—who has academic training as an engineer and was employed as an engineer at the time of trial, with a work history in both aquatic and land vehicles—was qualified to supply his own expert testimony.[3] But the parties do not address whether the circuit court was correct in concluding that the cause of the tread wear on the minivan's tires was so "complex or esoteric" that expert testimony was necessary under the case law cited above.[4]

---

[3] Khoury's academic and work history in engineering was summarized in materials that he submitted to the circuit court.

[4] I observe that it may be unclear what standard of review this court would apply to the issue of whether expert testimony is required under ***State v. Kandutsch***, 2011 WI 78, ¶28, 336 Wis. 2d 478, 799 N.W.2d 865. Cases from our supreme court have described this as both an issue of law subject to de novo review and as a discretionary decision subject to the erroneous-exercise-of-discretion standard. *Compare **Racine Cnty. v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 ("whether expert testimony is necessary to prove a given claim is a question of law that we review de novo" (citing ***Trinity Lutheran Church v. Dorschner Excavating, Inc.***, 2006 WI App 22, ¶26, 289 Wis. 2d 252, 710 N.W.2d 680)), *with **State v. Burch***, 2021 WI 68, ¶28, 398 Wis. 2d 1, 961 N.W.2d 314 ("What falls within the

(continued)

¶22 But I need not decide whether testimony that Khoury appeared prepared to offer could meet the **Daubert** standard embodied in WIS. STAT. § 907.02(1). *See* **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579 (1993). This is because § 907.02(1) is a part of the Wisconsin Rules of Evidence. *See* WIS. STAT. chs. 901-911. By their own terms, these rules do not apply to small claims actions other than jury trials, WIS. STAT. § 911.01(4)(d), and this was a bench trial. The fact that these rules do not apply is confirmed in WIS. STAT. ch. 799, which governs small claims actions. WISCONSIN STAT. § 799.209(2) provides that such proceedings "shall not be governed by the common law or statutory rules of evidence," with exceptions not relevant here. Accordingly, both §§ 911.01(4)(d) and 799.209(2) provide that the statutory criteria for the admission of expert testimony—that is, the requirements that the testimony be helpful to a finder of fact and that it meet the **Daubert** standard—do not apply here, because they are found in § 907.02(1), a statutory rule of evidence. Further, the court-made rule that certain matters *require* expert testimony in order for the case to reach the finder of fact also does not apply, because § 799.209(2) also exempts small claims proceedings from the common law rules of evidence.

¶23 This is not to say that anything goes in a small claims trial. The circuit court or commissioner is to "admit all [non-privileged] evidence having reasonable probative value, but may exclude irrelevant or repetitious evidence or arguments." WIS. STAT. § 799.209(2). Further, the court and commissioner are

---

'ordinary experience of mankind,' meanwhile, turns on the circuit court's exercise of its discretion 'on a case-by-case basis' to decide whether 'the issue is outside the realm of lay comprehension' or within the 'common knowledge' of 'the average juror.'" (citing **Kandutsch**, 336 Wis. 2d 478, ¶¶28-29)). But I need not resolve which standard applies for the reason next provided in the text.

authorized to "establish the order of trial and the procedure to be followed in the presentation of evidence and arguments in an appropriate manner consistent with the ends of justice and the prompt resolution of the dispute …." Sec 799.209(4). And, of course, all of this is against the backdrop of the general rule that plaintiffs bear the burden of proving their cases, here a claim of a breach of the warranty. *See Acuity Mut. Ins. Co. v. Olivas*, 2006 WI App 45, ¶14, 289 Wis. 2d 582, 712 N.W.2d 374.

¶24 For all these reasons, a plaintiff whose case requires the court or commissioner, sitting as a finder of fact, to reach a conclusion about a matter that involves technical issues bears the risk of a failure of proof if the plaintiff fails to secure testimony or other evidence that is sufficiently probative, relevant, and reliable that can be presented in an appropriate manner. *See Pluck v. Williams*, 2019 WL 1224570, 2019-Ohio-897, ¶9 (Ct. App.) ("while *expert* testimony generally may not be required in small claims court cases, a plaintiff must nonetheless present *reliable* evidence." (emphasis in original) (citing Ohio precedent to the effect that testimony in a car repair case provided by the plaintiff's stepfather constituted reliable evidence because the stepfather had a history of working on cars)).

¶25 Following remand in this case, it will be up to the circuit court to decide whether all probative, relevant, and reliable evidence that is properly before the court proves a defect in the minivan and a corresponding failure by Honda to satisfy the warranty. This might include all or parts of Khoury's testimony and exhibits. In the "informal" venue of a small claims court, *see* WIS. STAT. § 799.209, neither Khoury's qualifications to speak on the matter nor the methodologies by which he reaches his conclusions are subject to the gatekeeping rules applicable in other litigation.

¶26 For reasons that should be obvious by this point, I reject Honda's argument that the circuit court properly exercised its discretion in giving "less weight" to Khoury's testimony than to other evidence. The court stopped short of allowing, and then considering, the substance of the testimony that Khoury appeared ready to give.

¶27 The following is an observation that might assist the parties and the circuit court following remand. The circuit court here may have operated under the implied assumption that Khoury could not prevail on his warranty claim if he were not able to prove the precise nature of what he submits is a suspension issue causing the allegedly abnormal tread wear. If that was an implied assumption, I question it. A warranty is "'an assurance by one party to a contract of the existence of a fact upon which the other party may rely.'" *Hocking v. City of Dodgeville*, 2010 WI 59, ¶28, 326 Wis. 2d 155, 785 N.W.2d 398 (quoting *Dittman v. Nagel*, 43 Wis. 2d 155, 160, 168 N.W.2d 190 (1969), which in turn quoted the then-existing 17A C.J.S. Contracts § 342, p. 325); *see also Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (L. Hand, J.) (providing the formulation that is now a part of Wisconsin case law). As such, a warranty "'is intended to relieve the promisee of any duty to ascertain the fact for himself [or herself], and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue.'" *Hocking*, 326 Wis. 2d 155, ¶28 (quoting *Dittman*, 43 Wis. 2d at 160); *see also Metropolitan Coal*, 155 F.2d at 784. Therefore, as a general matter, when a manufacturer warrants that a product is free of defects, the holder of the warranty does not need to "ascertain" the precise cause of an alleged defect when the manufacturer's assurance "proves untrue."

**CONCLUSION**

¶28    For all of these reasons, Khoury is entitled to reversal of the order dismissing this action and to pursue a new de novo trial in the circuit court.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.